# Craig's Appeal.

## Assigned Estate of Citizens' Bank.

1. The powers and duties of the officers of an insolvent bank cease when it makes an assignment for the benefit of creditors. After its dissolution said officers are neither the agents nor trustees of the bank, and they may lawfully buy up outstanding claims against it, if in so doing they act fairly and with an honest intent. Hill *v.* Frazier, 10 Harris 320, distinguished.

2. Where stockholders of a bank are liable, under an act of incorporation, for an amount equal to the stock subscriptions, their liability is not that of sureties, but is special and *sub modo* only. It is limited to an amount equal to their subscriptions, and it accrues only where the assets of the bank have been exhausted; neither can it be enforced except by a judicial decree first obtained. Means's Appeal, 4 Norris 75, followed.

3. The liability of stockholders being no more than a ratable share of the debts of the bank, proportional to the amount of their stock, an auditor of an account of the bank's assignee cannot compel an advance contribution from them by disallowing their claims against said estate.

4. The contributory share of the stockholders is to be ascertained, apportioned and enforced either by process analogous to that prescribed for the benefit of note holders in the 32d and 33d sections of the Banking Act of 1850, or by bill in equity. But an auditor has no such power. The authority to estimate the value of the property of the bank and apportion the deficit among the stockholders is committed by law to the assignee.

January 8th 1880.  Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ.  GREEN, J., absent.

Appeal from the Court of Common Pleas, No. 3, of *Philadelphia county:* Of January Term 1878, No. 114.

Appeal of William Craig and others, from the decree of the court confirming the report of the auditor appointed to audit the account of the assignee for the benefit of creditors of the Citizens' Bank, of Philadelphia.

[Craig's Appeal.]

Said bank was incorporated by a special Act of Assembly, approved June 2d 1870. On December 2d 1874, the bank closed its doors, owing its depositors over $39,000, and shortly afterwards it made an assignment for the benefit of its creditors to the Hon. D. Newlin Fell. At the date of the assignment, George DeB. Keim was the vice-president, and Crawford Miller one of the directors of the bank, and both of them were stockholders. By the twelfth section of the charter of incorporation, it is provided, " That the stockholders shall be personally liable to an amount equal to the capital stock in addition thereto." Soon after the assignment a fund was created by contributions from a large number of the stockholders, for the purpose of purchasing the claims of the depositors against the bank. With this fund claims of the depositors to the amount of $24,182.65, were purchased by Keim and Miller, at a discount of fifty per cent., and they took assignments of the claims so purchased. October 25th 1875, the said assignee filed his account, which was referred to an auditor to adjust and settle the same, and to state a distribution of the funds. Before the auditor, Keim and Miller presented the claims so assigned to them, and contended that they were entitled to a pro rata distribution with the depositors, upon the face value of the said claims. The depositors objected to them participating in the distribution of the fund until the depositors had been paid in full, for the following reasons : 1. If the said Keim and Miller presented the said claims in their own right, they were not entitled to any portion of the fund, because at the time of their purchase of the claims they were officers of the bank. 2. If they presented the claims as agents of the stockholders, they could not participate in the distribution until all of the depositors had been paid, because, by the charter of the bank, the stockholders accepted the position of sureties to the depositors.

It was not alleged that Keim or Miller had been guilty of fraud or want of good faith in the purchase of the claims, and it was conceded that if said claims had remained in the hands of the original creditors they would have been entitled to share in the fund ratably with the other creditors.

The auditor allowed the claims of Keim and Miller, and awarded distribution to them on their face value. Exceptions were filed to the report, which the court (Ludlow, P. J., dissenting,) dismissed, and confirmed the report. From this decree this appeal was taken.

*Theodore F. Jenkins* and *B. Franklin Fisher*, for appellants.— The liability of the stockholders can be enforced in the mode attempted by the depositors in the proceedings before the auditor : Erb's Appeal, 2 P. & W. 296 ; Himes *v.* Barnitz, 8 Watts 39 ; McGowen *v.* Remington, 2 Jones 56 ; Souder's Appeal, 7 P. F. Smith 498 ; Rice's Appeal, 29 Id. 168 ; Worrall's Appeal, 5

[Craig's Appeal.]

Wright 524; Vierheller's Appeal, 12 Harris 105; Kelly's Appeal, 4 Id. 59; Kramer & Rahms's Appeal, 1 Wright 71; Moore *v.* Bray, 10 Barr 519; Huston's Appeal, 19 P. F. Smith 485; Fesler *v.* Hickernell, 1 Norris 150; Cooper's Appeal, 2 Casey 262.

The Act of April 16th 1850, sect. 39, 1 Br. Purd. 148, pl. 116, provides: "The said assignees shall pay out of the assets and property of the said bank, in case of an assignment, the debts and liabilities in the following order: First, noteholders; second, depositors; third, all other creditors, except stockholders, who shall be last paid.

These authorities clearly demonstrate it to have been the duty of the auditor to have stated an account as against the stockholders, for whose use the said claims were purchased, and when the amount of their liability to the appellants was determined, it would appear whether or not they were entitled to any portion of the fund. See Hogg's Appeal, 7 Norris 195; Gunkle's Appeal, 12 Wright 13.

Can directors of an insolvent bank participate in the distribution of the estate in the hands of its assignee for the benefit of its creditors, on account of a claim purchased by them subsequent to the insolvency, until the depositors have been paid in full? By the assignment the corporate functions did not cease. A corporation is not necessarily dissolved by its insolvency, nor by a writ of sequestration, much less by a voluntary assignment for the benefit of creditors: Germantown Passenger Railway Company *v.* Fitler, 10 P. F. Smith 124; Schrimpf *v.* Insurance Co., 5 Norris 373.

*Alfred Moore* and *George W. Thorn*, for appellees.—When one who was once a trustee becomes disconnected with the trust, he is at liberty to buy the property, which was the subject of the trust equally with any other person. There is no evidence in the record that Miller or Keim, at the time of their purchase of the claims were directors in the bank, if they were in fact so. As the assets of the corporation had passed out of their control, by law, into the possession of the assignee, they stood in no respect as trustees of it. Their power over the property, if they ever had any, had passed away.

It is submitted that a stockholder in a bank has as much right to acquire a claim of a bona fide creditor of it as any stranger, and that there is nothing in his relation to the corporation which forbids him to take, by gift or purchase, such a claim, and to recover it from the corporation as the creditor himself might have done.

The cases cited by the appellant are not applicable to the present case. In them the points decided arose where the liability

[Craig's Appeal.]

of the parties secondarily liable was fixed and determined, and not as here, where there is now no liability, nor can there be any, if at all, until the assets of the corporation are exhausted, which is not this case, as the account filed purports to be only on the first account of the assignee: Means's Appeal, 4 Norris 75.

In Hill *v.* Frazier, 10 Harris 320, the action was by the treasurer of a corporation who had purchased a claim against the same. The relation of trustee and *cestui que trust* then still existed, and the purchase by him of a claim against the corporation was held to be a violation of his duty thereto, as well as to the defendant, who was a member and director thereof.

Mr. Justice GORDON delivered the opinion of the court, January 26th 1880.

When Keim & Miller purchased the claims in controversy, they were neither agents nor trustees of the bank, neither did they occupy the position of sureties or partners, hence the authorities quoted by the counsel for the appellant do not apply to the case. They had, indeed, been officers of the bank, but their powers and duties as such ceased when the assignment was made. In fact, the corporate powers of the bank itself then ceased, saving and excepting such of those powers as might be necessary to give effect to the provisions of the 27th section of the Act of the 16th of April 1850. There is, therefore, no doubt about the right of the appellees to buy up outstanding claims against the corporation if, in so doing, they acted fairly and with an honest intent.

The case of Hill *v.* Frazier, 10 Harris 320, was very different from the case in hand. Not only when the claims were bought, but also at the time of the bringing of the suit and at its trial, Eldred, the equitable plaintiff, was the treasurer of the company, and it was well said that, as he was the confidential agent and trustee of the company, he could not create other relations which would put him in an attitude of hostility to his principal or *cestui que trust*. But had that relation been dissolved, either by operation of law or the act of the parties before the purchase of the claim, this rule would not have applied, since the reason for it would then have had no existence. Just so in the case in hand; by the act of the bank and the operation of law, the trust relation of the appellees had ceased to exist when the claims in controversy were purchased, and their relation to the corporation was that of stockholders and nothing else. Such being the case, they were as free to buy up outstanding claims against the corporation as any outside parties.

Then as to the other question: it is urged that the appellees should have been postponed to other creditors, because they are made liable by the act of incorporation for an amount equal to

[Craig's Appeal.]

their stock subscriptions; that in consequence, they occupy the position of sureties, and, therefore, they ought not to have been permitted to participate in a fund which was not sufficient to meet in full the claims against the bank. If, indeed, the assumption of their suretyship were correct, this would be true. But they are not sureties; their liability is special and *sub modo* only. It is limited to an amount equal to their subscriptions, and it accrues only when the assets of the bank have been exhausted, neither can it be enforced except by a judicial decree first had and obtained: Means's Appeal, 4 Norris 75. The effort here, however, is to compel contribution from the appellees before such decree, and hence, before there is any legal liability. This cannot be done.

Certain it is, these men can be compelled to pay no more than a ratable share of the debts of the bank proportioned to the amount of their stock; but in this case that share has not yet been ascertained. It may be more or less than the amount of their claims, or it may be nothing at all, depending upon the amount and final disposition of the property of the bank.

It is asked: how is this contributory share to be ascertained, apportioned or enforced? We answer either by process analogous to that prescribed for the benefit of note-holders in the 32d and 33d sections of the Banking Act of 1850, or by a bill in equity; but however this may be, one thing is certain, that is, that an auditor has no such power. It is not his business to estimate the value of the property of the bank and apportion the deficit among stockholders; that power is by law committed to the assignee. If, however, the claims of these appellees may be pushed aside by other creditors, it is, in effect, imposing upon them an advance contribution which may far exceed that which the statute would compel them to pay. This, however, would be neither lawful nor just, and the court below did right in refusing its sanction to an attempt of this kind.

The decree is affirmed; the appeal is dismissed, costs to be paid by appellant.