Joseph Louchheim et al. v. The Clawson Printing and Weighing Company. Appeals of Charles H. Elias et al.

*Contract—Termination of on dissolution of a corporation.*

Where a corporation's charter is declared void for nonpayment of taxes and a receiver is appointed, a claim by its manager for services rendered and money loaned after the date of the forfeiture cannot be allowed as against the receiver. The contract relation is terminated by the dissolution of the corporation as completely as by death of an individual party to the contract.

Argued Oct. 6, 1899. Appeals, Nos. 21 and 67, Oct. T., 1899, by Charles H. Elias and Alice Elias, from judgment of C. P. No. 1, Phila. Co., June T., 1897, No. 500, dismissing exceptions to auditor's report and confirming said report. Before RICE, P. J., BEAVER, ORLADY, SMITH, W. W. PORTER, W. D. PORTER and BEEBER, JJ. Affirmed. Opinion by W. W. PORTER, J.

Exceptions to auditor's report. Before the court in banc.

It appears from the record that the Clawson Printing and Weighing Company was incorporated under the laws of the state of New Jersey and by general proclamation the charter of the company was declared void by reason of its having failed to pay taxes for the year 1894. By bill filed on June 14, 1897, a receiver was appointed by the court of common pleas No. 1, Philadelphia county. Subsequently the receiver filed his account showing a balance in his hands of $3,966.48, and thereupon John Samuel, Esq., was appointed auditor to make distribution of the same. Claims were presented against the fund by Charles H. Elias for six months' salary from September, 1897, to February, 1898, inclusive, at $150 a month, and for cash loaned to the company, $263.32. A claim was also presented by Alice Elias, for printed tickets furnished by her to the Clawson Printing and Weighing Company, and used by the latter in their slot machines, the amount of said claim being $413.31. The claim of Charles H. Elias was founded on the resolution of the board of directors on April 1, 1895, creating the office of assistant manager, and Charles H. Elias was appointed to

fill that office until the next annual election at a salary of $1,800 per annum.   At the annual election for 1896–1897 he was elected for another year, and on March 15, 1897, the salary was again fixed at $1,800 a year.   He received his salary up to and including the month of August, 1897, and continued his duties as manager in looking over the condition of the machines, and collecting the revenue therefrom, until the receiver took charge in October, 1897.   His claim therefore was for services rendered the company through the months of September and October, 1897, and for the balance of the term of his employment, at $150 a month, up to and including February, 1898.   His claim for $263.32 was for moneys alleged to have been advanced by him to the use of the company, the evidence of which was the books of the company kept by him as treasurer, and presented before the auditor.   The auditor refused to allow any portion of the claim of Charles H. Elias and the major portion of the claim of Alice Elias, on which he allowed, however, $32.00.

Exceptions were filed to the auditor's report by Charles H. Elias and Alice Elias, which were dismissed by the court. Charles H. Elias and Alice Elias appealed.

*Errors assigned* were by Charles H. Elias (1) to the action of the auditor in disallowing the claim for salary for the months of September and October, $300.   (2) In disallowing the claim for salary for November and December, 1897, and January, 1898, at $150 per month, amounting to $450.   (3) To disallowing the claim for money advanced the said Clawson Printing and Weighing Company, amounting to $263.32.

Error was also assigned in the appeal of Alice Elias, in dismissing the first exception disallowing her claim for $413.31.

*William M. Stewart, Jr.*, with him *Frederick S. Drake*, for appellant.—In the view of equity this property constitutes a trust fund pledged to the payment of creditors and stockholders : Broughton v. Pensacola, 93 U. S. 266.

The fact of insolvency and ceasing business did not absolve this company from their obligation to pay the salary of Elias according to the terms of their agreement with him : Vanuxem v. Bostwick, 19 W. N. C. 74.

The corporate existence of the Clawson Company was not so

totally destroyed by the action of the governor of New Jersey as to defeat the creditors of the company. The obligations of the latter survive, and Elias can enforce his claim against any property belonging to the same which has not passed into the hands of a bona fide purchaser: Mumma v. The Potomac Company, 8 Peters, 281.

The New Jersey act of assembly was primarily intended as a method to enforce the payment of taxes, and even after the proclamation the company by the express terms of said act has the right to continue as a body politic, and to prosecute and defend suits, and do whatever is necessary to enable them to close up and dispose of their property. See section 53 of the Act of April 21, 1896, chap. 185. That is precisely what Elias was doing; he kept the machines in order, collected the revenues, paid the rent and wages, and disposed of some of the machines, precisely in the same way that the receiver subsequently did while he was winding up the concern.

Moreover, upon payment of these taxes to the state of New Jersey, the company had a right to be reinstated, and non constat this action could have been taken had not the receiver stopped the collection of revenues. Elias was dealing with a de facto corporation, and is, therefore, entitled to receive the compensation agreed upon for his services in its behalf. The failure to pay the taxes took place before his election, and he was in no way responsible for the same.

*V. Gilpin Robinson,* with him *Herbert Hart Boyd,* for appellee.—The learned auditor properly placed the disallowance of the claim upon the ground that the civil death of the corporation dissolved the contractual relationship. We submit that he is sustained by reason and authority.

The mutuality of the contract requires the same rule on the death of his employer, " by the death of the master or one of the firm of masters, the contract is at an end: " Smith on Master and Servant, p. 217; Addison on Contracts, 653; Womrath's Estate, 23 W. N. C. 434; Tasker v. Shepard, 6 H. & N. 575; Yerrington v. Green, 7 R. I. 589.

Another objection to the allowance of the claim was that the compensation claimed to have been fixed by the board of directors was excessive for the service rendered, and was unlawful.

Directors are trustees or agents for the stockholders, and, in the making of contracts, are held to good faith. They cannot be permitted to eat up the assets of a corporation by voting large and unreasonable compensation to themselves : 2 Morawetz on Corporations, pp. 787–795, and notes ; Taylor v. Taylor, 74 Maine, 582.

If for no other reason the learned auditor was justified in disallowing the claim of Alice Elias because it had not been authorized by the company.

The disallowance of the claim of Charles H. Elias for money advanced was properly disallowed, first, because the alleged payments had been made by money borrowed from Mr. Abeles, and, second, these payments, if made, were made by Elias in carrying on the business after the dissolution of the company. This the auditor finds, under the New Jersey law, was unlawful.

OPINION BY WILLIAM W. PORTER, J., November 20, 1899 :

The Clawson Printing and Weighing Company was incorporated in the state of New Jersey. Its business was the maintenance and use of certain slot machines, which, on inserting a coin, delivered a printed slip or ticket to the customer. The main business of the company was transacted in Pennsylvania. Charles H. Elias was re-elected by the board of directors treasurer and manager on February 24, 1897, and in March of the same year, his salary was fixed at $1,800 per annum. On May 4, 1897, the charter of the company was declared void by proclamation of the governor of the state of New Jersey pursuant to an act of the legislature, because of failure to pay taxes. On October 1, 1897, a receiver for the company was appointed by the court of common pleas No. 1, of Philadelphia county. Elias received his salary down to, and including August, 1897. The account of the receiver having been filed, and the auditor appointed, Elias presented a claim for salary for the months of September and October, 1897, and subsequently increased the claim, to include salary for November and December of 1897, and January of 1898. The whole claim was rejected by the auditor. Exceptions were filed and were dismissed by the court below. The ground upon which the auditor puts his rejection of the claim is that the dissolution of the company by proclamation, terminated the relation of the parties, which he

holds to have been a personal relation.   He finds that the work
claimed to have been done by the claimant was in the continu-
ance of the business, and not in the winding up of the com-
pany's matters.   He holds this to have been illegal, and that
the relation between the parties was severed by the death of
the corporation, in the same manner as the relation of master
and servant between natural persons is severed by the death
of one of them.   He well says : " Elias's relation to the company
was a personal one.   Had he died, the contract would have
been broken by act of God and his estate would not have been
liable to the company for any damage his decease might have
caused them.   The mutuality of the contract requires the same
rule on the death of his employer."   Support for this is found
in the authorities : Craig's Appeal, 92 Pa. 396 ; Dickinson v.
Calahan, 19 Pa. 227 ; Hammond's Appeal, 123 Pa. 503 ; Bowes
v. Seeger, 8 W. & S. 222.   It was a contract defining an exist-
ing relation, and could have no operation when that relation
ceased, for its foundation was gone : Bland v. Umstead, 23 Pa.
316.   If it be said that the dissolution of the company was
because of a default of the company in the payment of taxes,
and therefore not an arbitrary act of vis major, it may be an-
swered that the claimant was a stockholder, director and man-
ager of the company when he accepted the position for which
he now claims salary.   The default, which culminated in the
act of dissolution, had at that time been committed.   He was
in a position to know, when he entered upon his duties, that
the corporation might, at any time, lose its life at the hands of
the governor.   The possible severance of relation by the death
of the artificial person was in contemplation in this case, as
clearly as if the case were that of a natural person.   Other
objections were raised to the allowance of this claim, which
need not be discussed, since the ground of rejection was suffi-
cient.

The further claim of Elias for money advanced to the cor-
poration cannot be sustained.   The claimant says that he bor-
rowed the money from one, Abeles.   This would seem to con-
stitute Abeles the creditor, and, as appears from the record,
Abeles did in fact recover from the receiver the amount of a
judgment for money loaned.   In addition to this, however, the
auditor finds, that under the law of the state of New Jersey,

where a corporation is dissolved, as in this case, the legislative provision is, that the corporation shall continue to be a body politic for certain purposes, to enable the closing of their affairs, " but not for the purpose of continuing the business for which they are established." He further finds from the books of account that, " there are no credits or charges for any cash received by the company from Elias, and his own testimony is, that he borrowed from Abeles. All of the charges against the company " are for charges " expended not for closing up all business, but for carrying it on." The conclusion he rightly reaches, is, that " whether Elias or Abeles advanced the money, it was illegally advanced, and cannot be charged against the company."

IN THE MATTER OF THE APPEAL OF ALICE ELIAS.

The auditor holds that the last item of Mrs. Elias's claim of June 1, 1897, for $200, " is clearly not allowable as having been furnished after the dissolution of the company." This was a sound ruling. See foregoing opinion, in the matter of the appeal of Charles Elias. The auditor finds : " As regards the balance of the claim, the proof is not satisfactory. Mrs. Elias did not appear before the auditor. Her claim was supported by the evidence of Charles Elias only. Mrs. Elias did not print or manufacture the tickets. They were made by one Colgan, on the verbal order of Mr. Elias." He further finds that, by the by-laws of the company, it was provided that all contracts for work and labor, or materials furnished the company, made by its officers or agents, shall be first authorized by the board of directors, and that " the board of directors had not authorized the purchase of these tickets." He further says : " It is evident to the auditor that the price charged for these tickets is greatly exaggerated. If they are a claim against the company, fifteen cents a thousand is the value of them. . . . Mr. Colgan has not appeared before the auditor as a creditor. If Mrs. Elias paid Colgan's bills she was a volunteer, paying an unauthorized debt. To allow the manager of a company to contract debts in the teeth of the by-laws, and to permit his wife, a stockholder, to purchase such debts, would be opening a wide door to fraud."

In his report upon exceptions, the auditor says that, " from Mr. Elias's manner of testifying, the auditor does not feel at

55, (1899).]          Opinion of the Court.

liberty to place great reliance on his statements. The auditor is still of the opinion that the prices in Mrs. Elias's claim are greatly exaggerated, and he adheres to his view, that fifteen cents a thousand is a fair price for the tickets." The testimony was not taken stenographically before the auditor, and we are furnished only with his epitomized notes. His findings are those of fact. They are entitled to equal weight with the verdict of a jury. We can find nothing in the notes furnished us which would warrant a reversal of his findings which have been confirmed by the court below.

Both of the appellants object to the allowance of the claim of Louchheim on a certain promissory note of the company. The auditor reports that the note was proved, and that the company got the money. We are furnished with none of the evidence on this point, and in its absence we are bound to presume that the note was properly proven so as to make it a good claim against the company.

In both of the appeals the decree of the court below is affirmed.