## CONRAD et al. v. FUNNELL et al.

No. 13378—Opinion Filed Sept. 23, 1924.

Rehearing Denied Feb. 3, 1925.

1. **Husband and Wife—Antenuptial Agreement — Life Estate Granted with Remainder to Grantor's Heirs—Reversion in Grantor.**

Where the antenuptial agreement grants an estate for life to the intended spouse, with remainder to the heirs of grantor, it gives the heirs no estate by purchase, but leaves in the grantor a reversion which he is capable of transferring by subsequent deed.

2. **Remainders—Life Estate to Grantee with Remainder to Grantor's Heirs—Right of Grantor as Reversioner to Convey.**

A deed conveying a life estate to the grantee and at her death to revert to the heirs of grantor grants a life estate only, the fee being in the grantor and his heirs as reversioners, and the grantor, being a reversioner first in order of time, may dispose of the fee by will or deed subject only to the life estate created.

3. **Same—Death of Life Tenant—Effect as Vesting Fee Title.**

In this case Robert J. Funnell having granted a life estate to his wife in the land in controversy with reversion to the heirs of Robert J. Funnell, and Robert J. Funnell, the grantor, having outlived his wife, the land reverted to Robert J. Funnell and not to the heirs, and Robert J. Funnell had full right to make the deed that he did make to Fred Funnell and Jess Funnell, and they took the absolute fee to the land on the death of the life tenant.

(Syllabus by Maxey, C.)

Commissioner's Opinion, Division No. 1.

Error from District Court, Lincoln County; Hal Johnson, Judge.

Action by Fred Funnell and Jess Funnell against Charles L. Conrad, Mary Jane Conrad, John Funnell, Jennie Funnell, and Sofrania Funnell to quiet title to certain real estate. Judgment for plaintiffs, and defendants bring error. Affirmed.

Foster & Feuquay and Emery A. Foster, for plaintiffs in error.

James A. Embry and Embry, Johnson & Tolbert, for defendants in error.

Opinion by MAXEY, C. This action involves the construction of a certain paragraph of an antenuptial agreement entered into between Robert J. Funnell and Sarah E. Morris on the 12th day of November, 1908, by which agreement Robert J. Funnell conveyed a life interest to Sarah E. Morris in the following described tract of land, to wit: The northwest quarter of section 19, township 17 north, range 5 east, Lincoln county, Okla. The paragraph of said antenuptial agreement, the construction of which is the bone of contention in this case, is as follows:

"It is agreed that the said Robert J. Funnell hereby settles upon the said Sarah E. Morris a life estate in the following tract of land upon which he is now living and which it is the intention of the parties hereto when they shall have united in marriage to occupy as their residence and home, to wit: The northwest quarter of section 19 in township 17, north of range 5 east, in Lincoln county, Okla.

"Upon the death of the said Sarah E. Morris, the said real estate to revert to the heirs of him, the said Robert J. Funnell, to wit: His children by a former wife, as follows: John Funnell, Mary Jane Conrad, Lucinda Clapp, William Funnell, Judson Funnell, Eva Dickson, Maud Hermanstaffer, Jess Funnell, Fred Funnell and Ethel Ashmore, or the heirs of their body, in accordance with the laws of descent and distribution of the state of Oklahoma.

"It is further understood and agreed that the said Sarah E. Morris hereby accepts the life estate in the said described tract of land, to wit: The northwest quarter of section 19, in township 17, north of range 5 east, in Lincoln county, Okla., as for a complete settlement of all her property rights during her married life with the said Robert J. Funnell, and agrees that the same shall revert to the children of the said Robert J. Funnell, upon her death."

After this antenuptial contract was entered into, the said Robert J. Funnell and Sarah E. Morris were married and lived together several years and then separated and

Sarah E. Morris married again. During the time that Robert J. Funnell and Sarah E. Morris lived together, Robert J. Funnell, who owned considerable real estate in Lincoln and Payne counties, Okla., divided his land among his children, conveying to each one a certain part of land held by him; and on the 4th day of December, 1912, Robert J. Funnell conveyed the lands mentioned in said antenuptial agreement to Fred Funnell and Jess Funnell, the plaintiffs in this suit, and on the 15th day of June, 1915, Mrs. Funnell, nee Morris, executed a quitclaim deed to the plaintiffs, Fred Funnell and Jess Funnell, to the premises described in said antenuptial agreement. A short time before the commencement of this suit there was some controversy, the nature of which is not made very clear by the pleadings, arose between Fred Funnell and Jess Funnell and Mary Jane Conrad, his sister, and John Funnell, Jennie Funnell, and Sofrania Funnell in regard to the title to the land conveyed to Fred and Jess Funnell, and this suit was instituted for the purpose of having the title of Fred Funnell and Jess Funnell quieted in them. Robert J. Funnell and his wife were living at the time the suit was instituted, but a short time after the institution of the suit and before the trial, Mrs. Funnell, formerly Sarah E. Morris, died and the pleadings were amended to meet the situation. A demurrer was interposed by the defendants to the petition of the plaintiffs which was overruled by the court, and the defendants afterward filed an answer to the amended petition of the plaintiffs. It appears from the answer that Charles L. Conrad is the husband of Mary Jane Conrad, a daughter of Robert J. Funnell, and that Sofrania is the wife of William Funnell, a son of Robert J. Funnell, and that Jennie Funnell is the wife of John Funnell, a son of Robert J. Funnell. The answer briefly stated, makes the contention that under the above paragraph of the antenuptial agreement, that upon a termination of said agreement by death or otherwise, that the lands described therein passed to the children of Robert J. Funnell, notwithstanding the fact that Robert J. Funnell was living at the time of the death of Sarah E. Funnell, nee Morris, and was living at the time of the trial of this suit, and they construed the clause of said antenuptial agreement above quoted to mean that upon termination of the antenuptial agreement said lands immediately vested in the heirs or children of Robert J. Funnell. The plaintiffs contend that the fee to said land remained in Robert J. Funnell, and that upon the death of Mrs. Funnell, nee Morris, the land

reverted to Robert J. Funnell, and that the language used in the antenuptial agreement, to the effect that upon the death of Sarah E. Morris the land should revert to the heirs of Robert J. Funell, was inserted as a precaution against any claim that either Sarah E. Morris or her heirs could make to said lands in case she outlived Robert J. Funnell, and was not intended as a conveyance to the children of Robert J. Funnell in any sense, and that the fee remained in Robert J. Funnell, and upon the death of Sarah E. Funnell, nee Morris, the absolute fee simple title became vested in Robert J. Funnell.

The counsel for both plaintiffs in error and defendants in error have gone far afield in the argument of the case. They have argued reformation, coliaterals, fraud, and estoppel, but we do not think it necessary to follow counsel in all of their arguments, because of our view of the case. We think that under the antenuptial agreement Sarah E. Morris took a life estate in the lands in controversy, and that the fee remained in Robert J. Funnell, and that upon the death of Sarah Funnell, nee Morris, Robert J. Funnell became the absolute owner in fee of the land, or would have become the owner in fee if he had not conveyed it to the plaintiffs, Fred Funnell and Jess Funnell, but having conveyed it to them prior to the death of Mrs. Funnell, upon her death they became the absolute owner in fee of said lands. In the case of Neves et al. v. Scott et al., 9 Howard (U. S.) 196, the court had before it antenuptial agreements entered into between John Neves and Catharine Jewell, a widow. The material part of this agreement is as follows:

"Whereas a marriage is shortly to be had and solemnized between the said John Neves and the said Catharine Jewell, widow, as aforesaid, are as follows, to wit: that all the property, both real and personal, which is now or may hereafter become the right of said John and Catharine, shall remain in common between them, the said husband and wife, during their natural lives, and should the said Catherine become the longest liver, the property to continue hers so long as she shall live, and at her death the estate to be divided between the heirs of the said Catharine and the heirs of the said John, share and share alike, agreeable to the distribution laws of this state made and provided. And, on the other hand, should the said John become the longest liver, the property to remain in the manner and form as above."

The marriage took place soon afterwards and in October, 1828, Neves made a will and shortly thereafter died. By this will he directed commissioners to be appointed to divide his whole estate, both real and personal, equally between his wife, Catharine Neves, and G. W. Rowell, to whom he devised his half; then appointed Captain Richard Rowell and Miles Green his executor. Green declined to act as executor but Rowell qualified and was proceeding to sell the property named in the will when Catharine filed a bill against him in the superior court of Baldwin county and obtained an injunction staying further proceedings. She produced the agreement above mentioned, alleging that under it she was entitled to the whole of the real and personal estate during her natural life, and offered to give security for the payment of all of his debts. This suit resulted in Rowell being allowed the expenses he had incurred while acting as executor and Catharine gave bond with security for the payments of the debts of the estate. In 1835, Catharine intermarried with William F. Scott and died in September, 1844. In 1845, William Neves and James C. Neves, the brother and nephew of John Neves, filed their bill in the circuit court. The bill stated the above facts, and alleged that after the marriage between Catharine and Scott all the property remained in their joint possession until her death; that Scott was insolvent, and had used a large amount of the money and proceeds of the estate in payment of his debts; stated, as an estoppel, the former judgment of a court in Georgia sustaining Catharine's right upon the ground of the validity of the marriage settlement; charged waste, and prayed for a discovery, and decree that they, the complainants, might be put into possession of one-half of all the property which was owned by John Neves and Catharine Neves. In the final disposition of this case, the court held that marriage contract good and that both parties and their heirs were bound by its provisions and decreed accordingly. While this case is not exactly in point, it is very instructive on the questions herein presented under the agreement entered into by Robert J. Funnell and Mrs. Morris. Mrs. Morris did not pay Funnell to marry her, but Funnell paid her, and Funnell's children were not even collateral relatives of Mrs. Morris; they were clearly volunteers, as it cannot be said that any promises for his own children were any part of the consideration inducing Mrs. Morris to marry him. In 21 Cyc. 1247, it is said:

"The cases in which collaterals are not within the consideration of a marriage agreement proceed upon the ground that the wife cannot be treated as stipulating on the part of the relations of the husband, and that there is no one therefore who purchases anything for the benefit of these relations; but if there be a party to the agreement who distinctly purchases on behalf of the collat-

erals, the limitations so purchased are good and binding as against purchasers for value. In this country, in the leading case upon the subject, it is said: 'The result of all the cases. I think will show, that if, from the circumstances under which the marriage articles were entered into by the parties, or as collected from the face of the instrument itself, it appears to have been intended that the collateral relatives, in a given event, should take the estate, and a proper limitation to that effect is contained in them, a court of equity will enforce the trust for their benefit.' And this rule has been followed in other cases. Other decisions hold, however, that collaterals, as a general principle, are not to be included within the scope of the marriage consideration."

In this case, the plaintiffs in error claimed the benefit of the marriage contract to the effect that at the death of Mrs. Morris they became entitled to their proportion of the property as the children of Robert J. Funnell, from whom the property moved, and not the children of Mrs. Morris. It is clear as a matter of law that Mrs. Morris was not contracting on behalf of the Funnell children or purchasing anything for them, and it is clear that Funnell was not purchasing anything for them as he was already the holder of the entire estate. We are therefore of the opinion that the language involved was precautionary in limiting the estate to Mrs. Morris, and affirmatively negativing that her heirs or assigns should acquire any interest whatever by virtue of the marriage settlement over and above the estate for life. There is nothing in the circumstances to indicate that provision for Funnell's children was a part of the consideration that induced Mrs. Morris to marry him. The very opposite is supported by the circumstances. It was a provision limiting her estate by depriving her own heirs of an inheritance, and we must presume that, inasmuch as it affected her interest adversely, it cannot at the same time be thought a consideration moving to her. The case of Collins v. Phillips, 259 Ill. 405, 102 N. E. 796, is one involving an antenuptial contract and is very instructive on the subject. There is no question but that Robert J. Funnell had a right during his lifetime and even during the lifetime of his wife, Sarah E. Funnell, to convey the fee in the property herein involved, and upon the death of Mrs. Morris, the grantee in such conveyance would take the land in fee. In the case of Robinson v. Blankenship, 92 S. W. 854, the Supreme Court of Tennessee, quoting from the syllabus, says:

"A deed to the grantee for life, with remainder to the grantor if he should survive the grantee, otherwise to the heirs of the grantor, gives these heirs no estate by purchase, but leaves in the grantor a reversion, which he is capable of transferring by a subsequent deed."

The case of Akers v. Clark, 184 Ill. 136, is a case in point. Quoting from the syllabus:

"A deed conveying a life estate to the grantee and at her death to revert back to my heirs creates a life estate only, the fee being in the grantor and his heirs as reversioners, and the grantor being a reversioner first in order of time, may dispose of the fee by will or deed, subject only to the life estate created."

Under our view of the case Fred Funnell and Jess Funnell took the fee simple title in the land in controversy under their deed of December 4, 1912, and the quitclaim deed from Sarah E. Funnell, nee Morris, of July 5, 1915, took the absolute fee simple title to the land in controversy, and that the plaintiffs in error, defendants below, have no interest in said land, and the trial court was right in quieting the title to said land in Fred Funnell and Jess Funnell. The judgment of the trial court is therefore affirmed.

By the Court: It is so ordered.