**SOUTHWICK et al., Ex'rs., v. JONES et al.**

No. 25122.    Sept. 8, 1936.

Bond & Bond, for plaintiffs in error.

Wilkinson & Wilkinson, for defendants in error.

PER CURIAM. Linus E. Southwick died testate, a resident of Lancaster county, Neb. His will was duly admitted to probate on March 4, 1927, and Homer J. and Phillip O. Southwick, his two sons, were appointed as executors of his last will and testament by the county court of Lancaster county. On October 13, 1927, Homer J. and Phillip O. Southwick, as executors of the last will and testament of Linus E. Southwick, as parties of the first part, entered into a contract with R. E. Jones and Sid Jones, as parties of the second part, wherein they agreed to sell to the Joneses the southwest quarter of section 16, township 1 south, range 7 west in Stephens county, Okla., of which Linus E. Southwick died seized and possessed, for the sum of $5,600; $1,000 cash in hand paid, $1,000 to be paid on or before April 15, 1928, at which time the first parties were to deliver to the second parties a warranty deed, and the parties of the second part were to execute a real estate mortgage on said real estate for the unpaid balance of $3,600 payable within three years, same to bear interest at the rate of 6 per cent. per annum, payable semiannually on November 15th and April 15th of each year.

On the suggestion of the attorneys, who represented the Joneses in the matter of obtaining fee-simple title thereto for them, that said will be admitted to probate in Stephens county, Okla., said executors, Homer J. and Phillip O. Southwick, did on the 16th day of January, 1928, file their petition for letters in the county court of Stephens county, with a copy of the will and the probate thereof duly authenticated, and on the 9th day of February, 1928, said foreign will was duly admitted to probate, and said Homer J. and Phillip O. Southwick were appointed executors of said estate, and after giving bond, letters testamentary were issued to them by the county court of Stephens county.

On December 13, 1928, said executors filed their return of sale of real estate showing that they had sold it to Robert E. Jones and Sid Jones for the recited consideration of $5,600 cash. After due notice of hearing return of sale of real estate, and on 24th

day of December, 1928, an order confirming sale of real estate was entered whereby said executors were ordered and directed to convey to Robert E. Jones and Sid Jones said real estate, which was done.

The record reflects that Robert E. Jones and Ima Jones, his wife, and Sid Jones and Ida Jones, his wife, executed to said executors as a part of the purchase price of said real estate their note in the sum of $5,600, and to secure the payment thereof executed their real estate mortgage on the real estate so sold to them by said executors. The Joneses, having made default under the terms of said note and mortgage, Homer J. Southwick and Phillip O. Southwick, executors of the last will and testament of Linus E. Southwick, deceased, as plaintiffs, commenced the present action against the Joneses and others to reduce said note to judgment and to foreclose their mortgage lien on the real estate involved herein. The Joneses, after filing a motion to dismiss, a motion to make more definite and certain, and a motion to require the plaintiffs to give security as provided in section 1207, O. S. 1931, filed their answer and cross-petition, wherein they refer to the foregoing contract of October 13, 1927, and allege that said note and mortgage were void and without consideration for the reason that the plaintiffs were residents of the state of Nebraska and had never been residents of the state of Oklahoma, and had never personally submitted themselves to the courts of the state of Oklahoma, and that the ancillary proceedings instituted in the county court of Stephens county by said executors were instituted through their attorneys and without them personally appearing for any purpose, and that they by fraud and mistake failed and refused before entering upon the duties of their trust to file a written appointment in said county court of Stephens county of an agent upon whom service of process might be had and failed to file their consent that service on such agent should have the same legal effect as if served on them personally within the state as provided by section 1073, O. S. 1931, and that such was a fraud upon the county court of Stephens county and upon said defendants, and that all proceedings had thereafter were void and of no legal effect, and that the county was not authorized to approve the sale of said real estate, and as a further ground of fraud and mistake, defendants asserted that the will of said Linus E. Southwick authorized said executors to buy and sell real estate, exchange the same, and to sell the same for cash, but that in the making of said sale

the said plaintiffs sold said real estate for part cash and part on credit and made a return of sale to the county court showing that said real estate was sold to the defendants for cash and that such return was a legal fraud upon the judge of the county court and upon the defendants and the beneficiaries under said will; that they had no notice of said fraud and mistake until the filing of the present action; that certain of the beneficiaries under said will were minors and would have two years after obtaining their majority in which to attack said order of confirmation and deed for fraud and irregularity. The defendants then offered through their answer and cross-petition to rescind and offered to reconvey the premises and surrender the possession of the premises to the plaintiffs upon the payment of $2,000, less the rental value of said real estate; and that if the plaintiffs failed and refused to accept said offer to rescind, the defendants have judgment for $2,000 paid, less rentals, and that the court impress said real estate with a lien to the extent of the amount due them.

On the issues thus framed said action went to trial and judgment was entered declaring the contract between the executors and the defendants of October 13, 1927, void, as well as the executors' deed, and dismissing plaintiffs' action, and further adjudging defendants the relief demanded in their answer and cross-petition on account of fraud as charged therein, including a personal judgment against the plaintiffs in the sum of $2,000, the amount paid on the purchase price of said land, and interest in the sum of $432 paid on the note sued on, and taxes paid by defendants in the sum of $159.99, less the rental value of said land in the sum of $200, and decreeing the same a lien on said land.

At the outset we are confronted with the question as to whether or not the provisions of section 1073, O. S. 1931, relating to the appointment by a nonresident executor of an agent upon whom service of process may be made, is jurisdictional. If so, the county court of Stephens county never acquired jurisdiction, and hence the sale was void, otherwise not. This section of our statute was taken from the Dakota statute, and we are unable to find where said section has been construed by either the Dakota or Oklahoma court. Therefore, it presents a question of first consideration. An examination of the provisions of said section discloses that no condition is found therein which says that unless a nonresident executor or

412

administrator complies therewith the proceedings relative to the administration of an estate are void; neither do we find any prohibition therein against such an executor or administrator maintaining a suit in the courts of this state without complying with said statute.

By section 1207, O. S. 1931, foreign executors are expressly granted the power "* * * to maintain or defend any suit or action, and to prosecute and recover any claim in the courts of the state of Oklahoma, in the same manner as if the letters testamentary or of administration had been granted to such person by the proper authority in this state. * * *"

In the light of this statute, when considered in conjunction with section 1073, supra, assuredly it was not the intention of the Legislature to give to a foreign executor to whom letters testamentary had not issued in this state greater privileges before the courts of said state than a nonresident executor to whom letters of administration had been issued by the proper court of this state.

We take it that the purpose of the appointment of such an agent was, in the event a claim was disallowed by such executor and it became necessary for a creditor to sue on such claim so presented and disallowed, that he could obtain service on such agent and thereby bind such executor. In other words, to make nonresident executors as accessible and amenable to the process of the court as if they were resident executors.

Though defendants desired to issue legal process against said executors on some claim or demand falling within the purview of section 1073, supra, and further that no agent had been appointed on whom legal process could be served, said defendants would not have been remediless, for they could have applied to the county court for an order on said nonresident executors to show cause why their power and authority should not be revoked and resident administrators with the will annexed appointed. Should the county court in default of a response to such order to show cause or on the hearing thereof revoke their power and authority, then under section 1188, O. S. 1931, all their acts before such revocation would be valid. Such procedure would afford the defendants ample remedy and give the executors an opportunity to be heard and comply, if they so desired. The rights of the defendants, therefore, would not be prejudiced, and the rule announced in Lewis' Sutherland Statutory Construction (2d Ed.)

vol. 2, section 611, should be applied in construing section 1073, supra, which is:

"Those directions which are not of the essence of the things to be done, but which are given with a view merely to the proper, orderly and prompt conduct of the business, and by the failure to obey which the rights of those interested will not be prejudiced, are not commonly to be regarded as mandatory; and if the act is performed, but not in the time or in the precise mode indicated, it will be sufficient, if that which is done accomplishes the substantial purposes of the statute."

But this is not such a case, as defendants were afforded every opportunity to present their contention in the present action, the executors being the moving parties.

To say that the matter of appointing an agent under section 1073, supra, upon whom service of process might be made, is jurisdictional is begging the question. The most that can be said of the failure of said nonresident executors to so appoint an agent as required by said section is that such failure is an irregularity or a nonjurisdictional defect.

An analogous situation is that where a guardian fails to file the additional bond as required by law before the sale of his ward's land, and this court, in speaking thereon in Carolina v. Montgomery, 74 Okla. 121, 177 P. 612, says:

"The failure of a guardian to file the additional sales bond required to be filed prior to the sale of his ward's land under an order of court is not jurisdictional, and the failure to file such bond is a mere irregularity."

The court in support of this rule cites 1 Church on Probate Law and Practice, p. 184:

" 'The omission of the court to require, and of the guardian to give, a special sale bond is a mere irregularity which does not affect or impair the jurisdiction of the court which ordered and affirmed the sale, where the statute does not declare that, if a special bond be not given, a guardian's sale shall not be made, or that, if made, it shall be void, and where it does not provide that the order of sale shall become effective only when such special bond is given.' "

The present case is comparable to the case of Mangold v. Grace (Neb.) 193 N. W. 338, wherein the administrator of the estate of Henry Shroder, who died intestate, a resident of Wyoming, leaving property in both Wyoming and Douglas county, Neb., filed his petition as such administrator in the district court of Douglas county, Neb., for

a license to sell said land for the payments of unpaid debts in Wyoming. Peter Mangold became the purchaser at such sale and thereafter brought an action to quiet title thereto. The heirs of Henry Shroder, deceased, as a defense thereto raised the question that said sale was void for the reasons, among others, that a foreign administrator under the statutes of Nebraska was required to file an authenticated copy of his appointment in the district court, and for the further reason that he failed to file an authenticated copy of his bond given in the Wyoming court, and to give a bond to the district court of Douglas county, Nebraska, and asked that title to the land be quieted in them.

In disposing of the former contention the court said:

"That the failure of a foreign administrator to file an authenticated copy of his appointment in the district court, as required by section 1423, Comp. St. 1922, is but an irregularity, is evident from the holding of this court in Myers v. McGavock, 39 Neb. 843, 58 N. W. 522, 42 Am. St. Rep. 627. In that case a guardian's sale was attacked for failure of the guardian to file an authenticated copy of his appointment. The statutory requirement as to filing by a foreign guardian of an authenticated copy of appointment is the same as for a foreign administrator. In that case a certified copy instead of an authenticated copy was filed, as was done in the instant case."

In settling the latter controversy this language is used:

"That the failure to file in the district court an authenticated copy of the administrator's bond, given in the Wyoming court, and that no bond was given by the administrator to the district court for Douglas county are mere irregularities, has been determined by this court in Pohlenz v. Panko, 106 Neb. 156, 182 N. W. 972."

When said will was admitted to probate by the county court of Stephens county, and letters testamentary were issued, the donees —the executors—of the power therein became authorized to sell the land in question under the will without a petition therefor, and without obtaining an order thereon. In such an instance jurisdiction is invoked by the admission of the will to probate containing the power to sell and the issuance of letters, and in all other instances by the filing of the petition setting forth the jurisdictional facts to warrant a sale. It would be an absurdity then to say, even though jurisdiction attached in the instant case to make the sale when said will was admitted to probate and letters issued, that omission of the filing of

said written appointment of an agent was anything other than an irregularity or a nonjurisdictional defect.

An apt expression of a highly parallel rule is laid down in Bancroft's Probate Practice, vol. 1, sec. 279, and that part thereof relative here reads:

"But one who has received letters of administration, and has entered upon and conducted the administration of the estate, though he has not taken the prescribed oath of office or furnished bond in accordance with the requirements of statute, is an administrator de facto, if not one de jure."

In support of the foregoing text is cited Harris v. Coates (Idaho) 69 P. 495; Smith v. Steen (N. M.) 150 P. 927.

We, therefore, conclude that the omission of said nonresident executors to appoint an agent under section 1073, supra, was an irregularity or nonjurisdictional defect which was cured by the order confirming sale of real estate, unless there were fraud and mistake in plaintiffs assuming the duties of their trust without first filing a written appointment of an agent as required under said section.

The pleading of the defendants in so far as same relates to fraud and mistake of plaintiffs in their failure to comply with section 1073, supra, reads:

"The defendants show that the plaintiffs by fraud and mistake failed and refused before entering upon the duties of their trust to file a written appointment in said county court of an agent upon whom service of process might be made and failed to file said consent that service on such agent should have the same legal effect as if served on them personally within the state, as provided by section 1159, C. O. S. 1921.

"They say said failure was a fraud upon the county court of this county and upon these defendants and that all proceedings in said ancillary proceedings thereafter had in the county court were void and of no legal effect and would not authorize the county court to approve a sale of said premises as was undertaken in said proceedings."

The only evidence in support of these allegations is that of the county judge and the deputy court clerk of Stephens county, the former testifying that said proceedings were had before him, and that he turned over to the court clerk for filing all papers and pleadings relating to said estate which had been received by him; the latter testifying that the appearance docket and files in the county court relating to the Southwick

estate did not reflect 'the appointment of an agent by said nonresident executors.

These allegations do not constitute actual fraud as defined by section 9417, O. S. 1931, and neither does the evidence in the slightest degree tend to sustain the charge of fraud. "Failed and refused", found in said allegations, presuppose a demand by some one, and it is a logical inference that such demand was made either by the defendants or the county court, and that being true they possessed the same knowledge of the true facts as did said executors, and hence no actual fraud. The records of the county court relating to the Southwick estate are public records and accessible to all who might desire to exercise sufficient effort to examine them.

"Mistake" has no foundation here, for as said in Freeman on Judgments (5th Ed.) sec. 1246:

"The mistake must have been with respect to a matter as to which knowledge of the real facts could not have been ascertained by the exercise of reasonable diligence."

To say that the exercise of reasonable diligence in this case would not have revealed the presence or absence of the written appointment of such agent, as the case may be, discredits itself.

It is denied on the one hand and affirmed on the other, that it was necessary for the foreign executors to personally appear before said county court in order for the court to acquire jurisdiction to make their appointment as nonresident executors.

Neither section 1108, nor section 1109, O. S. 1931, which are respectively as follows:

"When a copy of the will and the probate thereof, duly authenticated, shall be produced by the executor, or by any other person interested in the will, with a petition for letters, the same must be filed, and the court or judge must appoint a time for the hearing, notice whereof must be given as provided for an original petition for the probate of a will."

"If, on the hearing, it appears upon the face of the record that the will has been proved, allowed and admitted to probate in any of the territories, or any state or the United States, the District of Columbia, or in any foreign county or state, and that it was executed according to the law of the place in which the same was made, or in which the testator was at the time domiciled, or in conformity with the laws of this state, it must be admitted to probate, be certified in like manner according to the facts and recorded, and have the same force and effect as a will first admitted to probate in this state, and letters testamentary or of administration issued thereon"

—requires it, but on the contrary the language thereof expressly indicates otherwise by the fact that the county court is required to admit a will so produced to probate when the authenticated record shows a compliance with the provisions of the foregoing sections.

The case-made reveals that defendants attached as a part of their answer and cross-petition the petition filed by said foreign executors in the county court of Stephens county, of which the authenticated record of the proceedings had in the county court of Lancaster county, Neb., together with all other proceedings had in the county court of Stephens county, were a part. Such record shows that said will was admitted to probate in the county court of Lancaster county, Nebraska, and that all conditions had been met which would warrant the county court of Stephens county to admit said foreign will to probate, which it rightfully did.

Defendants' pleading shows on its face that the foreign executors were represented in the ancillary proceedings in the county court of Stephens county by attorneys.

When said foreign executors produced before the county court of Stephens county, Okla., the county in which a part of the estate of the deceased was situated at the time of his death, the will and the probate thereof duly authenticated with their petition for letters, and filed the same, the county court of Stephens county thereupon had jurisdiction over the person of the executors, over the subject-matter, and power to appoint them as nonresident executors of the estate of Linus E. Southwick, deceased, and to issue letters testamentary, which was done. Everything was done essential to invoke the jurisdiction of the county court.

The matter of exhibiting the authenticated record was procedural and peculiarly within the scope of the duties of the attorneys for said nonresident executors. 6 C. J. 641. The presence of said plaintiffs at the hearing of said foreign will for probate could have added nothing to the face of the authenticated record which was sufficient unto itself to warrant the county court of Stephens county in admitting said foreign will to probate.

Next in line for determination is, Does the will empower the executors to convey the land in question and accept a mortgage thereon for a portion of the purchase price?

The text of the will so far as is pertinent for a decision on this proposition reads:

"During said ten year period my executors hereinafter named shall have and are hereby given power to conduct all lines of business in which I may be engaged at the time of my death in like manner as I myself would do if living or present, including the buying, selling or exchanging real estate and personal property, exchanging of any of the property of said estate for other property or selling the same for cash as my said executors shall deem for the best interest of my estate and the income arising from said estate shall be appropriated and used as follows: * * *"

The executors of said will were the sons of the testator and it is natural that the testator had implicit confidence in the judgment of his sons. The context shows that the donor of the power empowered said executors to do the same things relative to "all lines of business" as he "would do if living or present, including the buying, selling or exchanging real estate and personal property, exchanging any of the property of said estate for other property or selling the same for cash as my said executors shall deem for the best interest of my estate."

To say it was the intent of the testator, after granting to his executors the broad discretion to do what he might do relating to his estate if "living or present", that his real estate could only be sold for cash would be placing a strained construction thereon. Certainly, if the executors could do what the donor could do if living or present, then irrevocably it may be said that a sale could be made for part cash and part by note secured by a mortgage. The volume of the testator's estate is indicative of the fact that had the deal arisen during his lifetime his sagacity would not have led him to a different conclusion than that of his sons herein. The fact that under terms of said will the power of said executors to deal with said estate extended over a period of ten years is consistent with a part cash and a part credit transaction.

Who knew better than the sons of the testator what the testator would do if he had been present and consummated the sale himself? Assuredly, he could do whatever he desired, and make any terms relative to the method of payment which he might wish. So, likewise, when such power was vested in his sons as executors, they could also say whether the consideration should be all cash or part cash and part on credit.

The Supreme Court of Texas had before it a similar question to that presented by the record here in Gray v. McCurdy, 266 S. W. 396, wherein Gray sought to require specific performance of a contract regarding certain real estate which he acquired as a remote grantee of the only one of the executors or trustees who had qualified under the will of William Blomfield, and wherein the will granted to said executors or trustees the power to "sell, call in and convert into money" all of his estate and personal property. The defense interposed pertinent to the application of the rule here was:

"First. The will did not authorize a sale of the land, save for cash, and hence the attempted sale to E. E. Ramsey for part cash and part on time was void."

In disposing of this point the court says:

"The trustee or trustees were plainly empowered to exercise judgment in deciding on a sale wholly for cash, or a sale wholly on time, or a sale for part cash and notes for the balance. A sale for all cash would reflect the decision that now was the opportune time to effect the complete conversion of the real estate into money. A contract to convey in the future would imply the decision that the estate would profit by a postponed conversion of the land into money, at an agreed price. A contract to sell for part cash and part notes would involve the decision that it was best for the estate to sell, though the conversion of the land into money be partially postponed. The will left it to the trustee or trustees to make either decision. In making it, the trustee or trustees were allowed to exercise unbridled discretion.

"It follows that the record title of Gray, as disclosed by the abstract, was good as against defendant in error's first objection."

A similar pronouncement was made in McLeuegan v. Yeiser (Wis.) 91 N. W. 682, as is reflected in the fourth paragraph of the syllabus:

"One having the power to sell lands and invest the proceeds is not, in the absence of provision to the contrary, bound to sell for all cash, but may take a mortgage on the property for a reasonable part of the price."

It must be observed under section 1283, O. S. 1931, that an executor or administrator may sell real estate of a deceased person for cash or for one-third cash and the balance on credit. What the executors did in the present case is in keeping with the policy of this state relative to the sale of real estate belonging to a deceased person, and as disclosed by the foregoing statute.

Therefore, we are lead to the conclusion

that the executors had full power to sell the real estate in question for part cash and part on time, evidenced by note secured by a mortgage, unless extrinsic fraud was committed when the executors made the return of sale show that they had sold the real estate for cash instead of part cash and part on credit. If such constituted fraud and same inheres in the return of sale, then defendants cannot be heard to complain, for intrinsic fraud or fraud which inheres in the record does not form the basis of an action.

Incident to a decision on the proposition that as the return of sale showed a cash consideration in lieu of part cash and part credit was a fraud on the court and the defendants, we set forth the pertinent parts of the answer and cross-petition relating to such defense:

"As a further ground of fraud and mistake the defendants show that the purported will of said Linus E. Southwick authorized said executors to buy and sell real estate, exchange the same and to sell the same for cash, but disregarding these provisions the said plaintiffs undertook to sell said real estate for part cash and part credit, but nothwithstanding these facts the said plaintiffs, on the 7th day of December, 1928, made a return of sale to the county court of Stephens county, Okla., stating that they had sold said real estate to the defendants for cash. They show that such return was a legal fraud upon the judgment of the county court and upon these defendants and the beneficiaries under the will and that by reason of such fraud the deed executed thereupon conveyed no title to these defendants.

"They show to the court that they had no notice nor knowledge of said fraud and mistake until the filing of this suit on the 4th day of November, 1931."

The return of sale discloses that the sale of real estate in question was made for $5,600 cash to Robert E. Jones and Sid Jones, two of the defendants. Upon legal notice given, an order confirming said sale was made by the county court and said sale was confirmed and therein this language appears:

"The court further finds that said sale was legally made and fairly conducted and that said sum of $5,600 is not disproportionate to the value of the property sold and that a sum exceeding such bid of $5,600 at least 10 per cent. exclusive of the expenses of a new sale cannot be obtained; that said executors, Homer J. Southwick and Phillip O. Southwick, in all things, proceeded and conducted and managed said sale as provided by statute and in accordance with the will of said deceased. * * *"

The only other evidence offered in support of said allegations of fraud and mistake was that of the county judge, before whom said matter was heard, who testified that he would not have approved said sale had he known it was not for cash, but that he would have required the true state of facts regarding the sale to have been shown.

Though it be fraud when the executors made their return of sale to show that the real estate was sold for $5,600 cash, when in truth and in fact only $2,000 thereof was in cash, and the balance of the purchase price, or $3,600, was on credit, evidenced by a note secured by a mortgage on said real estate, such fraud inheres in the record and is intrinsic fraud and no action can be buttressed thereon. The county court through its order pronounced judgment on such return of sale and on such statement as to the sale being a cash transaction, and thereby precluded such issue being presented in this case.

Many decisions of this court could be cited in support of our conclusion, but we only refer to Landrum v. Ross, 113 Okla. 275, 240 P. 1060, and Scott v. Abraham, 60 Okla. 10, 259 P. 270.

It is made clear by the record that the contract of October 13, 1927, between the executors under the last will and testament of Linus E. Southwick, deceased, and the Joneses, wherein the former agreed to sell and the latter to buy the real estate in question, was entered into in good faith by all parties thereto, and that the ancillary proceedings had in the county court of Stephens county were had for the purpose of effectuating said contract, and that such ancillary proceedings were had at the behest of the defendants; that the then attorney for the defendants had before him at the time he approved title to said real estate a complete record of all the proceedings had in the county court of Stephens county, relating to said ancillary proceedings up to and including the order confirming sale of real estate which included the authenticated record of the proceedings had in the county court of Lancaster county, Nebraska, relating to the estate of Linus E. Southwick, deceased, and that said attorney was as conversant with the record as were the executors. In the light of these circumstances, even though there be fraud, defendants having participated therein and having knowledge thereof would be precluded and estopped to be heard to complain.

As to the contention made relative to the minor beneficiaries under said will, it is not

necessary for us to determine, for they are not before this court, and if they have suffered any detriment by virtue of the acts of said nonresident executors, our Legislature in its wisdom has seen fit to protect them as evidenced by section 1309, O. S. 1931.

We have attentively examined the entire record in this case, and find no act on the part of said nonresident executors looking to the fulfillment of said contract entered into by them for the sale of said real estate and the proceedings had in the county court of Stephens county looking to the consummation thereof, which is inconsistent with an honest belief and intent on the part of said executors. As there was no evidence to support the allegations of the answer and cross-petition of the defendants, the demurrer of the p'aintiffs to such evidence should have been sustained, and as the execution of the note and mortgage sued on was admitted, judgment should have been rendered for the plaintiffs pursuant to the prayer of their petition.

We conclude, therefore, that the title obtained by the Joneses from said executors conveyed the title of which Linus E. Southwick died seized and possessed.

This being an equitable action, and the judgment of the trial court being clearly against the weight of the evidence, this court under the familiar rule as laid down in Saied v. Kouri, 146 Okla. 51, 293 P. 245, should render such judgment as the trial court should have rendered in the first instance, or reverse and remand the same, with directions. In compliance with such rule we reverse the judgment of the trial court and remand said action, with directions to the trial court to enter judgment for the plaintiffs on the note and mortgage sued on, and as prayed for in plaintiffs' petition.

The Supreme Court acknowledges the aid of Attorneys M. C. Spradling, W. F. Tucker, and Carter Smith in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Spradling, and approved by Mr. Tucker and Mr. Smith, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and RILEY, CORN, and GIBSON, JJ., concur.