WHITTEN et al. v. WHITTEN.
MORRIS v. MORRIS.

Nos. 33648, 33649. April 11, 1950.

Rehearing Denied June 13, 1950.

*219 P. 2d 228.*

Harold Springer, of Duncan, for plaintiffs in error.

George & George, of Ardmore, for defendants in error.

R. Gordon Lowe and V. E. Stinchcomb, both of Oklahoma City, and A. B. Honnold, of Tulsa, amici curiae.

GIBSON, J. Each of these is an action to quiet title to real estate against claims of defendants and, in the alternative, to partition the premises in event the court finds the defendants to be owners of interests therein. The issues on appeal are identical, and for purpose of review the actions have been consolidated.

On December 17, 1934, one Julia A. Morris, the mother of defendants in error Francis Elizabeth Whitten and Calvin Lee Clifford Morris, executed her two warranty deeds, one conveying to the daughter, Francis, the N. E. 1/4 of S. E. 1/4 sec. 30, twp. 1 north, range 7 West, Stephens county, Oklahoma, and the other to the son, Calvin, the S. E. 1/4 of S. E. 1/4 of said sec-

tion 30. In each the estate granted is for the life of the grantee with remainder to the heirs of the body of the grantee. And in each there appears in the habendum clause the following:

"It is intended hereby to convey unto the party of the second part a life estate only in and to the above described lands and tenements which shall not be subject to alienation or encumbrance by the party of the second part; and upon the death of the party of the second part the remainder in fee simple shall vest as of that date in the heirs of the body of said party of the second part, by right of representation."

Thereafter, on March 9, 1948, said grantor executed separate quitclaim deeds to said grantees covering the lands theretofore conveyed. In each, after quoting the paragraph of the earlier deed, herein quoted, there is the following:

"Whereas, the above quoted provision of said deed, whereby title to the remainder in said property was retained by the grantor and her heirs until the death of the said Francis Elizabeth Whitten, was inserted in said deed for the protection of the said Francis Elizabeth Whitten against the possibility of her own improvidence; and

"Whereas, conditions have changed since the execution and delivery of said deed to such extent that such protection of the said Francis Elizabeth Whitten is no longer deemed necessary, and the undersigned grantor now desires to convey said described property to the said Francis Elizabeth Whitten in fee simple, without condition, restriction or limitation:

"Now, therefore, considering the premises and in further consideration of the sum of One Dollar in hand paid, the receipt whereof is hereby acknowledged, the undersigned, Julia A. Morris, a single person, does hereby give, grant, quit-claim and convey the above described property unto the said Francis Elizabeth Whitten, and to her heirs and assigns, forever, without condition or restriction whatsoever.

"And for the same consideration the undersigned grantor does hereby expressly revoke and rescind all of the restrictions contained in the aforesaid warranty deed of December 17, 1934, against the sale and/or encumbrance of said described property.

"To Have and To Hold the above granted premises unto the said Francis Elizabeth Whitten, her heirs and assigns forever."

At the time of the execution of the earlier deeds the grantee daughter, Francis, was the mother of two children, Ronald D. Whitten and Gary D. Whitten, plaintiffs in error in cause 33648, and the grantee son, Calvin, was the father of one child, John Clifford Morris, plaintiff in error in cause 33649.

The actions were separately instituted by said grantees as plaintiffs and in each the named children or child of the plaintiff, according to the fact, were made defendants or defendant with the addition of the words: "individually and as representatives of and for all persons who may take under the terms and provisions of that certain deed dated December 17, 1934, executed by Julia A. Morris upon property described in plaintiff's petition."

It is alleged in each petition that the remainder to the heirs of the body of the grantee in the deed of December 17, 1934, is a contingent remainder; that by reason thereof the fee title, subject to the life estate granted, remained vested in the grantor, Julia A. Morris; and that the effect of the deed of March 9, 1948, was to vest in the grantee, unconditionally, the entire fee title with full right to sell and convey the same. And it is on those allegations, in each case, that the title is sought to be quieted in the plaintiff.

In the second count in each petition there is alleged, in substance, that by reason of existing conditions there was opportunity to sell the property to the advantage of all interested persons, whether existent or not, and that if not now sold the probable result would be a substantial loss to all concerned. And it is therein prayed that if it is decreed that plaintiff is owner of only a life estate in the premises same be sold and the proceeds thereof, other than the share of the plaintiff, be placed in a trust suitable for the protection of those who shall be entitled to the remainder thereof.

In the answers of defendants, filed in each case by guardian ad litem appointed because of their minority, it is admitted that through the deed of 1934 plaintiff acquired a life estate in the premises and that by the deed of 1948 all restrictions upon the grantee's right and power to convey such life estate were removed. But, it is expressly denied that the effect of the latter deed was to vest in the plaintiff an unconditional fee in the premises. And it is averred that the estates of the defendants are vested interests in remainder and not subject to alienation or partition during the life of the plaintiff.

The trial court held that the effect of the deeds of December 17, 1934, was to convey a life estate with restrictions upon the alienation thereof by the grantees and leave vested in the grantor the fee title in remainder with full power of disposition. And that the effect of the deeds of March 9, 1948, was to vest in the grantees absolute fee titles without any restrictions on alienation. On the bases of these findings the court quieted the title of the plaintiffs against claims of defendants.

For reversal it is urged that the interests of defendants under the earlier deeds were vested estates in remainder which were not disturbed by the deeds executed in 1948 and, hence, the judgment of the court was erroneous. To sustain the judgment it is urged that the estates in remainder were contingent and were therefore defeated by the grantor's later deed.

The contention that defendants took vested remainders under the earlier deeds is not sound. The remainders were contingent. It does not follow,

however, that such remainders, because contingent, were defeated by the later deeds.

In support of the contention that the remainders were vested, cases are cited where the limitation over was to the "children" of the grantee. Such decisions are not in point nor so considered by the authorities relied on. Of the cases cited emphasis is placed on Landers v. People's Building & Loan Ass'n, 190 Ark. 1072, 81 S. W. 2d 917, where the limitation over was to the children and the remainder was held to be vested. In Watson v. Wolff-Goldman Realty Co., 95 Ark. 18, 128 S. W. 581, Anno. Cas. 1912A, 540, citing as authority therefor the earlier case of Horsley v. Hilburn, 44 Ark. 458, wherein the words of the limitation were the same as in the instant case, it was held that the remainder was contingent. The basis of the distinction and the reason why the remainders here involved are contingent is made clear by the Supreme Court of Missouri in construing the pertinent statute which, in substance, is the same as that of Oklahoma (60 O. S. 1941 §41). In Emmerson v. Hughes et al., 110 Mo. 627, 19 S. W. 979, it is said:

"Here the deed by its own terms created a life estate in Mary R. Godman, with remainder 'to the heirs of her body.' Now, there is nothing in this deed from which we can say that the word 'heirs' means 'children;' and, this being so, we must give to it its ordinary legal signification. As no one can be the heir of a living person, it must follow that there was, at the date of the deed, an uncertainty as to who would take in remainder; for it could not be told who would be the heirs of Mary R. Godman until her death. This uncertainty as to the persons who are to take in remainder is the very thing which creates one class of contingent remainders. This has been pointed out in numerous cases in this court, and it is sufficient to cite Rodney v. London, 104 Mo. 250, 15 S. W. Rep. 962, and the cases there cited. The deed here in question would, it is believed, create an estate tail at common law under the influence of the rule in Shelley's Case. Section 8838, Rev. St. 1889, first enacted in 1835, abolishes the rule in Shelley's Case (Riggins v. McClellan, 28 Mo. 23; Tesson v. Newman, 62 Mo. 198; Muldrow v. White, 67 Mo. 470); and at the same time declares what effect shall be given to a deed like the one now in question. It provides: 'Where a remainder shall be limited to the heir or heirs of the body of a person to whom a life estate in the same person shall be given, the persons who, on the termination of the life estate, shall be the heir or heirs of the body of such tenant for life, shall be entitled to take as purchasers in fee simple, by virtue of the remainder so limited in them.' By force of this section, those persons who were the heirs of the body of Mary R. Godman at the termination of the left estate—that is to say, at her death—took the estate in fee simple."

In such situation the intent to postpone the vesting of the remainder is inferred from the language used. And the same result would necessarily follow where the instrument creating the remainder expressly shows the intention of the grantor to postpone vesting until the happening of a certain event. 21 C. J. 995, §152. Such is the case here because in the language of the deed, quoted above, the vesting is expressly postponed until the death of life tenant.

However, it does not follow, as contended by plaintiffs, that because the fee title, except to the extent of the life estate, remained vested in the grantor, that the latter's deed to the life tenant conveyed an indefeasible fee, thus defeating the contingent remainder. Since the effect of the conveyance was to create a contingent remainder in the entire fee, the only alienable or assignable estate remaining in the grantor was that of reversion which was subordinate to the contingent remainder because its enjoyment is dependent upon the failure of the event upon the occurrence of which the remainder was to vest (33 Am. Jur. 669, §196). The rule is stated in Mrs. E. M.

Copenhaver et al. v. J. Sheffey Pendleton et al., 155 Va. 463, 155 S. E. 802, 77 A. L. R. 324, 342, as follows:

"Upon a grant or devise of a particular estate limited to determine upon the happening of an event which is certain to happen, with a contingent remainder over, there remains in the grantor or devisor a *reversion*, subject to be defeated by the happening of the contingency upon which the remainder is conditioned. 1 Washburn (6th Ed.) sec. 169; 1 Tiffany on Real Prop. (1920 Ed) sec. 141; Fearne, Remainders, p. 279, et seq.; Graves, Notes on Real Prop., sec. 181; 1 Minor on Real Prop. (2d Ed.) secs. 758 and 720; 23 R. C. L. Remainders, secs. 55-57, pp. 518-520; Bigley v. Watson, 98 Tenn. 353, 39 S. W. 525, 38 L. R. A. 679."

Under the circumstances, the deeds of March 9, 1948, were ineffective to disturb the existence of the remainders theretofore created and therefore could not enlarge into a fee the life estates then enjoyed by the grantees. The only effect of such deeds was to carry to the grantees the reversion theretofore vested in the grantor. Therefore, the judgments quieting in the plaintiffs a fee title were erroneous.

In the answers the right of plaintiffs to partition is challenged by defendants. However, in the briefs on their behalf it is recognized that the interests of all who are or may be concerned would be benefited by a sale of the lands. It is urged that, inasmuch as the issue upon the question of the partition is solely one of the law, the parties being in accord as to the desirability thereof, it is of vital importance that the question of the authority, if any, for such sale be established.

That, as between life tenant and owners of contingent interests in remainder, there can be no partition in kind, we held in Waldon v. Baker, 184 Okla. 492, 88 P. 2d 352. Whether in the situations that obtain herein there may be a sale of the aggregate of the interests constituting ownership of the land is a matter addressed to the sound equitable discretion of the court. A state-ment of the judicial power in such situation and the conditions of its proper exercise is stated in Coquillard v. Coquillard, 62 Ind. App. 489, 113 N. E. 481, as follows:

"A proceeding such as this is maintainable only on the theory that, by reason of some exigency growing out of changed conditions, it becomes necessary to convert lands into personalty in order that the body of the estate may be preserved. The courts are in accord that in order to the validity of the proceedings the funds must be substituted for the lands, all interests and estates in the latter transferred to the former, and that the fund must be ordered administered as nearly as possible as the lands would have been handled had there been no conversion. Noble v. Cromwell, 26 Barb. (N. Y.) 475; Gavin v. Curtin, supra; Mead v. Mitchell, supra; Cheesman v. Thorne, supra; Bofil v. Fisher, supra; Monarque v. Monarque, 80 N. Y. 326; Barnes v. Luther, 77 Hun. 234, 28 N. Y. Supp. 400; Rutledge v. Fishburne, supra, note page 767 of 97 Am. St. Rep."

In the briefs it appears to be contemplated by the parties that in event of such sale the proceeds thereof may be distributed to those entitled thereto and that for such purpose the life estate be separated from the remainder by estimating the value thereof and paying such value to the life tenant. While it is within the power of the court to separate the life estate from the remainder it should be done only where the exigencies of the case require it. A recognition of such power in the court and the kind of situation which justifies the exercise thereof is stated in the Coquillard case, supra, wherein it is said:

"As we have indicated, it was apparently testator's intention that the lands involved here should be held, owned, and enjoyed as lands under the various estates created therein, until title became absolute under the terms of the will. While, as we have said, the courts by virtue of the compelling force of some necessity have the power to encroach upon the intention of the testator, in order that the estate may be

preserved and the interests of the beneficiaries protected, such power should not be exercised beyond the scope of influence of such necessity. The separation of the life estates from the estates in remainder by estimating the values of the former and paying such values to the life tenants is not required here by the exigencies of the situation. To do so would constitute an unnecessary and therefore unauthorized infringement upon the testator's intention. The payment to the life tenants of the estimated values of their life estates and allowing the residue to accumulate at interest for the benefit of the contingent owners would doubtless accomplish the legal equivalent of holding the entire fund in trust as hereinafter indicated. It is not likely, however, that by the former method the practical equivalent of the latter would be attained. It is within the power of the court, in its discretion, to dispose of the fund in the former method. 16 Cyc. 639 and 616; 30 Cyc. 291; Swain v. Hardin, 64 Ind. 85; Russell v. Russell, 48 Ind. 456; Datesman's Appeal, 127 Pa. 348, 17 Atl. 1086, 1100. . . ."

See Restatement of the Law, Property Future Interests, Vol. II, ch. 11, sec. 179 et seq. p. 692; 33 Am. Jur. 743, sec. 265.

It appearing from the record that the interests of those who take by way of remainder, the unborn as well as those living, are properly represented, and it further appearing that the requisite accord between the parties appears from the record, it follows that a judgment for the sale of the entire ownership in the land in each case for the purpose of reinvestment, in whole or in part, would be authorized and proper upon showing being made to the satisfaction of the court that such sale would be beneficial.

Whether there may be a separation of the life estate from the estates in remainder is a question addressed to the discretion of the court in handling the fund arising from the sale and to be exercised in light of the necessity arising from the exigencies of the case.

The judgments are reversed and causes remanded for further proceedings not inconsistent with the views herein expressed.

DAVISON, C. J., and WELCH, LUTTRELL, HALLEY, JOHNSON, and O'NEAL, JJ., concur. ARNOLD, V. C. J., and CORN, J., dissent.