In re SHAILER'S ESTATE.

CUMMINGS et al.   v.   SHAILER.

No. 35484.

Supreme Court of Oklahoma.

Feb. 2, 1954.

John W. Tillman, and Fred Tillman, Pawhuska, and Richard K. Harris, Bartlesville, for plaintiffs in error.

J. C. Cornett, Pawhuska, and Templer & Wright, Arkansas City, Kan., for defendant in error.

PER CURIAM.

This appeal involves a question of probate procedural law and a question of substantive law relating to the reciprocal rights between a life tenant and remaindermen to royalty payments accuring from a secondary recovery of oil from existing and developed leaseholds.

John N. Shailer, a resident of Kansas, died testate and seized with mineral or royalty interests in Washington County, Oklahoma, on September 6, 1948. His will left the real estate to his wife for life with a remainder over to his two children.

The procedural question has its inception in the refusal of the county court to hear or approve a final accounting, and to order the distribution of the estate under the will, upon the theory that the failure of the executrix, who was a nonresident, to appoint a local agent under the provisions of Title 58 O.S.1951 § 162, deprived the court of jurisdiction to proceed. In this the county court was in error and upon the probate appeal the district court so held. Southwick v. Jones, 177 Okl. 409, 60 P.2d 774.

The executrix, who is the appellee here, appealed from the order of the county court upon both questions of law and fact.

This gave rise to the contention of the appellants, both in the district court and

here, that the district court was without authority to do other than affirm or reverse the county court upon the jurisdictional ground, and if reversed, to remand the case to the county court for further proceedings.

Appellant cites In re Hick's Estate, 189 Okl. 310, 116 P.2d 905, and there are many other cases supporting the general rule that on appeal from a county court, in probate proceedings, the district court has appellate jurisdiction only and can pass only on such issues as were presented and tried in the county court, and that the issues cannot be changed on appeal.

We know of no case that holds that the appellate jurisdiction of the district court, in a probate appeal, is defeated by the refusal of the county court to hear evidence on the issues presented.

This court has held in numerous cases that a trial de novo has a well defined meaning and as applied to probate appeals to the district court, does not contemplate the framing of new or different issues.

An examination of the cases cited and of the other cases of this court discloses that the jurisdiction of the district court on probate appeals is limited to rendering such judgment or making such an order as the county court should have made. Wise v. Cutchall, 171 Okl. 60, 41 P.2d 864.

The precise question then is what issues were in fact presented in the county court. The executrix filed an instrument designed to be a final accounting and petition for distribution in the estate, which appears to be sufficient for the purposes, and the appellants objected to the approval of the account and the distribution of the estate upon both jurisdictional and non-jurisdictional grounds. The county court erroneously refused to hear evidence on the issues presented. The executrix appealed to the district court, on questions of both law and fact, and thus effectively raised every question relating to the refusal of the county court to approve the final account and distribute the estate. The issues presented upon appeal were the exact and identical issues that were presented and should have been heard in the county court.

We believe that the rule stated, In re Combs' Estate, 66 Okl. 29, 166 P. 1070, is applicable here, as follows:

"Where the county court sustains a demurrer to evidence offered in support of a petition to probate an alleged lost will, and enters its order and judgment denying probate of will, and the proponents appeal to the district court on both questions of law and fact, held, that in the district court upon appeal cause will be heard de novo, and be considered in the same manner as if the case and proceedings had lawfully originated in said court."

A chronological statement of fact, insofar as the substantive rights of the parties are involved, are these: William H. Shailer, then owner of the land, on August 22, 1904, made an oil and gas lease to the predecessors in interest of Forrest Oil Corporation, the present owner of the lease, which was later modified to provide that subject to certain drilling requirements, which were performed, that it should remain in force and effect as long as oil and gas was produced from the premises in paying quantities. Agnes E. Shailer succeeded to the interest of William H. Shailer in the land, and on September 4, 1934, conveyed the same to the decedent, John N. Shailer, reserving to herself all royalties from oil or gas or other minerals produced during her lifetime, which she thereafter released by a conveyance dated June 16, 1943. Intervening these two dates, and on May 11, 1942, at a time when he owned no mineral interest in the land, John N. Shailer executed the will here probated, which gave his wife, Evaliena Shailer, a life estate in the premises, less a fractional acreage conveyed to Dewey Portland Cement Company, with a remainder over to his children.

After John N. Shailer acquired the mineral interest, and thus became the owner of title in fee simple estate, two conveyances were made, one of which was held to create a co-tenancy in himself and his wife, Evaliena Shailer, as to the mineral

interests, and the other was a conveyance by John N. Shailer, joined by his wife, of the surface rights to a stranger. The trial court held that the effect of these transactions was to vest or reserve the mineral interest to the decedent, John N. Shailer and Evaliena Shailer, his wife, in tenancy common, by reason of which each owned an undivided one-half interest therein.

The question presented is whether decedent's will, as to his mineral interest, created a life estate in his wife, and if so, the reciprocal rights of the life tenant and remaindermen in accruing royalties under the lease.

■ It is not seriously questioned, as a matter of general law, that where a lease for oil and gas purposes is made by an owner of land prior to the creation of a life estate therein, although actual drilling operations have not begun at that time, the life tenant is entitled to all accruing royalties. Lawley v. Richardson, 101 Okl. 40, 223 P. 156, 43 A.L.R. 803; Summers Treatise on Oil and Gas, Section 196.

It is contended that the general rule is inoperative in the case at bar for the reasons that a life estate cannot be created in personal property and that a royalty interest constitutes personal property, and that the present oil production is by virtue of an unitization agreement, which was executed by the life tenant without authority, and which provides for a secondary recovery of oil, which will destroy the estate of the remaindermen.

■ The contention that a life estate cannot be created in personal property is not sustained by the authorities, and needs no further discussion in view of the fact that the reservation of all royalties from oil and gas and other minerals, as to unaccrued royalties, which means oil and gas and other minerals in the ground, is usually treated as real property. 131 A.L. R. 1371, and the Oklahoma cases therein cited, including McCully v. McCully, 184 Okl. 264, 86 P.2d 786, and the later cases of Ross v. District Court of Oklahoma County, 199 Okl. 573, 188 P.2d 861, and Mershon v. Essley, 204 Okl. 660, 233 P.2d 293.

The most serious contention made is that the present production from the leasehold is because of a water flooding project, which will eventually and effectually extinguish the rights of the remainder, and it is claimed that it should be considered on the same legal basis as the opening of new mines by a life tenant.

The record discloses that there was a unitization agreement made between Dewey Portland Cement Company, Evaliena Shailer, both in her individual and representative capacity, as owners of the minerals, Forest Oil Company, the leaseholder and operator of the lease, and Wiser Oil Company, a holder of an over-riding royalty interest, which provided that the entire forty acres should be developed and produced as a unit. This unitization agreement did not provide for water flooding methods of production, as is contended by appellants, but instead, recited that the method was already in use.

■ It is undoubtedly true that any recovery of oil and gas from the premises, whether by primary or secondary methods, diminishes the estate of the remaindermen. But as stated in Lawley v. Richardson, supra [101 Okl. 40, 223 P. 159]:

"An examination of the foregoing cases * * * discloses that a life tenant takes the land in the condition in which it was when the estate vested in him, and that he is entitled to all of the rents and profits which may accrue from the lands by reason of minerals which may be produced from mines or wells existing at the time of the death of the testator, or which may be produced from mines or wells opened under authority of conveyances executed prior to the vesting of the life estate."

The precise and determinative question is therefore not the method of recovery, not the implied duty of the operator to adopt a certain method of recovery, but rather whether the operator has the authority under the lease to so develop and produce the leasehold.

■ There is respectable authority to the effect that there is an implied covenant in oil and gas leases that a lessee

should resort to a secondary recovery method shown to be practical and presumably profitable as a means of getting additional return from the lease.

Merrill, on Covenants Implied in Oil and Gas Leases, Sec. 77, (2nd Ed.1940), with respect to the stimulation of production, stated in pertinent part:

"Accordingly, the covenant for diligent operation requires the lessee to employ such methods as are reasonably adapted to stimulate or increase production."

and this language is in harmony with our holding in Katschor v. Eason Oil Co., 178 Okl. 634, 63 P.2d 977, where no tubing was maintained in a well for the purpose of facilitating the flow of oil.

Professor Merrill, in a later note, in his authoritative treatise, to Sec. 78, suggests that the lessor conceivably might compel his lessee to join in a reasonable plan for unitized operation, designed to enhance total recovery.

We do not believe that the change of mineral ownership, subsequent to the execution of the lease, would affect the rights of the lessee to operate the lease as a unit, where as here, no injury or damage accrues to the lessors.

Barnes v. Keys, 36 Okl. 6, 127 P. 261, 45 L.R.A.,N.S., 178, cited by appellants, is not in point, because it deals with reciprocal rights where the life tenants and remaindermen join in the execution of an oil and gas lease. Whitten v. Whitten, 203 Okl. 196, 219 P.2d 228, is subject to the same comment, because it relates to the equitable powers of the district court to direct the sale and conversion of lands in fee, held by a life tenant, with conditional estates over to unascertained persons, where emergencies arise rendering such action by the court imperative in order that the persons interested might be protected in their legal rights.

The judgment of the Trial Court is affirmed.

JOHNSON, V. C. J., and WELCH, DAVISON, O'NEAL, WILLIAMS and BLACKBIRD, JJ., concur.

CORN, dissents.

This Court acknowledges the services of attorneys, Clayton Carder, Everett M. Arney and Finis C. Gillespie, who as Special Masters aided in the preparation of this opinion. These attorneys were recommended by the Oklahoma Bar Association, approved by the Judicial Council, and appointed by the Court.