## Kirschler *v.* Wainwright, Appellant.

*Corporations — Banks — Insolvent corporations — Liability of stockholders—Statutory liability—Act of March 11, 1872, P. L. 324—Statute of limitations—Stockholders of record—Interest.*

1. A creditor of an insolvent corporation is entitled to hold one liable as a stockholder who appears such on the books.

2. Where a stockholder who transfers his stock fails to have the transfer registered on the corporate books, he remains liable as a stockholder to the creditors of the corporation.

3. Where the amount of the liability of a stockholder is ascertained, such a liability from that date will bear interest.

4. In an action by the receiver of an insolvent bank against certain stockholders to recover on their liability under the special Act of March 11, 1872, P. L. 324, providing that stockholders of the bank in question should be individually liable for all debts in double the amount of stock held by them, it was held that the action was not barred by the statute of limitations, although more than six years from the date when the receiver was appointed, but less than six years from the date when upon petition of the receiver it was judicially ascertained that the bank's collectable assets were insufficient to pay its debts and enforcement of the full statutory liability of stockholders was authorized by the court for that purpose.

5. In such case, stockholders registered in the corporate books were properly held liable, although the stock had been purchased for other parties, there being no evidence that they had apprised the corporation that they held the stock as trustees.

6. In such case, the stockholders were properly held liable for interest on the demand against them from the date of the assessment.

Argued October 18, 1916.    Appeal, No. 134, Oct. T., 1916, by defendants, from judgment of C. P. Allegheny Co., July Term, 1914, No. 1325, on verdict for plaintiff in case of Charles F. Kirschler, Receiver of the Traders' & Mechanics' Bank, a corporation, v. Samuel J. Wainwright and Charles P. Walker, Partners doing business as Walker & Wainwright, amended by the substitution of The Colonial Trust Company as Administrator of the Estate of Charles P. Walker, deceased.    Before Brown, C. J., Mestrezat, Moschzisker, Frazer and Walling, JJ.    Affirmed.

Assumpsit on statutory liability of stockholders of a bank.   Before Reid, J.

The facts appear in the opinion of the Supreme Court.

Verdict for plaintiff for $15,015 by direction of the court and judgment thereon.    Defendant appealed.

*Errors assigned* were in entering judgment for the plaintiff and refusing to direct a verdict for the defendants.

*Frederic W. Miller,* for Samuel J. Wainwright, appellant, with him *Thomas D. McCloskey,* of *Kinnear, McCloskey & Best,* for The Colonial Trust Company, Administrator, appellant.—The action was barred by the statute of limitations: Amer et al. v. Armstrong et al., 6 Pa. C. C. 392; Link et al. v. McLeod et al., 194 Pa. 566; Franklin Savings Bank, to use of Miller, Assignee, v. Bridges, 20 W. N. C. 43; Cook v. Carpenter (No. 1), Lipper's App., 212 Pa. 165; Newton's Est., 46 Pa. Superior Ct. 40.

*William A. Challener,* with him *Clarence Burleigh,* for appellee.—The action was barred neither by the Act of

March 28, 1867, P. L. 48, nor the general statute of limitations of March 27, 1713, 1 Sm. L. 76; Miller v. Connor, 177 Mo. App. 630 (160 S. W. Repr. 582); Schofield v. Turner, 213 Pa. 548.

OPINION BY MR. JUSTICE MOSCHZISKER, January 8, 1917:

This action was instituted by Charles F. Kirschler, as Receiver of the Traders' & Mechanics' Bank, a corporation under the laws of Pennsylvania, against Samuel J. Wainwright and Charles P. Walker, copartners doing business as Walker & Wainwright; Mr. Walker died and the record was amended by substituting his administrator as a defendant; the suit was in assumpsit to recover against the defendants on their liability as stockholders of the plaintiff corporation, under the special Act of March 11, 1872, P. L. 324, incorporating the Odd Fellows Savings Bank, the name of which was subsequently changed to the Traders' & Mechanics' Bank; Section 9 of this act provides that "the stockholders shall be individually liable for all debts and liabilities of said bank double the amount of stock held by them"; judgment was entered on a verdict for the plaintiff, and the defendants have appealed.

The firm of Walker & Wainwright did a brokerage business in the City of Pittsburgh at the time of the transactions involved in this case; in 1902, forty shares of the capital stock of the plaintiff bank were purchased in their name, the certificate being issued accordingly; in 1903, a similar purchase of 50 shares was made, which was followed later in 1903 by one of 20 shares. The evidence indicates that all this stock was bought for the account of a customer, Francis J. Torrence, and that the certificate for each lot was assigned in blank by Walker & Wainwright and delivered to Mr. Torrence, such deliveries not being made, however, until from three days to two years after the respective purchases; moreover, notwithstanding the execution and delivery of the

several blank transfers, the stock in question continued to stand on the books of the plaintiff corporation in the name of Walker & Wainwright, and no effort was made to apprise the bank of the alleged ownership of the transferee.

January 23, 1908, at the suggestion of the attorney general of the Commonwealth, a temporary receiver for the bank was appointed by the Common Pleas of Dauphin County. February 4, 1908, Mr. Kirschler was made permanent receiver, the order for that purpose stating that the bank was then "insolvent and in an unsound and unsafe condition to do business"; further, that "the manner of conducting its business" was "injurious and contrary to the interests of the public." The receiver was authorized "to take charge of its property and wind up its business......under and subject to the orders of the court"; and, having duly qualified, he proceeded with his duties.

February 21, 1910, Mr. Kirschler presented a petition to the proper court, in which he averred an insufficiency of assets to meet the bank's indebtedness, and prayed for authority to enforce the full statutory liability of its stockholders; whereupon it was ordered and decreed that the petitioner "be and he is hereby authorized and directed to assess against each of said stockholders a sum equal to their statutory liability for the indebtedness of said bank, and to collect the same." An assessment was forthwith made, and, not being able to collect the amount alleged to be due by the defendants, on May 28, 1914, the receiver instituted the present suit.

Defendants assign for error the affirmance of plaintiff's request for binding instructions, the refusal of a like request on their own behalf and the subsequent declination to enter judgment for them non obstante veredicto; and they state three questions involved: (1) When did the statute of limitations begin to run? (2) Under the circumstances of this case, were the defendants subject to assessment as owners of the stock here in

controversy?    (3) If subject to assessment, were the defendants liable for interest on the demand against them from the due date thereof?

On the last two propositions the appellants contend that they were not legally liable as stockholders, and, if it should be decided to the contrary, then that no interest should be charged against them; since we see no shadow of merit in either of these contentions, we shall first briefly dispose of them before taking up the more serious question of the statute of limitations.    The governing rules of law in reference to defendants' liability, both as to principal and interest, are thus stated in 7 R. C. L., p. 393, Sec. 378: "A creditor of an insolvent corporation is entitled to hold liable as a stockholder him who appears to be such on the books"; Sec. 390, "Where a stockholder who transfers his stock fails to have the transfer registered on the corporate books, he remains liable as a stockholder to the creditors of the corporation" (see Aultman's App., 98 Pa. 505, 516) ; p. 380, Sec. 362, "The weight of authority and reason are to the effect that, where the amount of the liability of a stockholder is ascertained......, such a liability will from that date bear interest; this is especially true if the stockholder denies and contests the question of his liability" (see Casey v. Galli, 94 U. S. 673, 677; Bowden v. Johnson, 107 U. S. 251, 263).    Therefore, on the admitted facts in this case, without regard to the alleged bar of the statute of limitations, under the law the defendants were liable as stockholders for the full amount of the assessment against them, with interest from the date thereof; but the question as to when the statute commenced to run against this liability, presents an interesting and important point which calls for more extended consideration.

As already noted, the bank was alleged to be insolvent on January 23, 1908, and closed its doors not later than February 4, 1908, when the permanent receiver was appointed.    This suit was not brought until May 28, 1914,

more than six years from the initial date of insolvency, but less than six years from February 21, 1910, when it was judicially ascertained that the bank's collectable assets were insufficient to pay its debts, and enforcement of the full statutory liability of the stockholders was authorized for that purpose. Hence, the controlling question is: Does the statute of limitations run from the initial insolvency decree, when the receiver was appointed, or from the time of the decree ascertaining the deficiency of assets and authorizing the assessment? The court below determined that the latter was the proper date to fix upon in computing the limitation period, and the defendants contend this was error; which contention we shall now consider.

The first statute depended upon by the appellants is the Act of March 28, 1867, P. L. 48, providing that "no suit at law or in equity shall be brought or maintained against any stockholder or director in any corporation ......, to charge him with any claim for materials or moneys for which said corporation......could be sued, or with any neglect of duty as such stockholder or director, except within six years after the delivery of the materials or merchandise or the lending to or deposit of money with said corporation......, or the commisssion of such act of neglect by such stockholder or director." It is clear the case before us is not within the express terms of this statute, and we are of opinion that the act never was intended to apply to circumstances such as here presented; furthermore, absurd results would follow were an attempt made to force its application. As said by the learned court below, "If the act applies so as to bar the statutory liability of stockholders of an insolvent bank, then the statute would begin to run when the deposit is made and not at the insolvency of the bank; and we would have the rather anomalous position of the statute of limitations barring an action that could not be brought, because there is certainly no liability of the

stockholder for the debts of the bank while the bank is solvent."

The question remains, however, does the general statute of limitations of March 27, 1713, Pa. Stat. at L., Vol. III, p. 12, apply and bar the plaintiff's action? In disposing of this controlling point, the court below states that in its opinion a ruling in Means's App., 85 Pa. 75, governs. After calling attention to the fact that the charter of the bank involved in that case provided for double liability of stockholders, the learned trial judge says: "Certain creditors filed a bill against the stockholders in the Court of Common Pleas of Franklin County; the bank being situated in Cumberland County. A decree was entered against the stockholders and an appeal was taken. The judgment of the lower court was reversed on three grounds: (1) That the court of Franklin County had no jurisdiction to entertain the bill; (2) That the assignees were the proper parties to bring the suit; (3) That the suit was premature. On this last reason the [Supreme] Court says: 'The debt due a depositor is still a debt due from the bank. The property of the bank is primarily liable for the payment of the debts of the corporation. The assets of the bank should first be applied in discharge of that indebtedness. The personal liability of the stockholders is designed as further security to the depositor; hence, although a stockholder is personally liable to a depositor, yet, unless the statute directs otherwise, it is a liability which in equity cannot be enforced until the assets of the bank, which is the primary debtor, are first exhausted....... The assignees have not stated any account. The debts due the bank have not been collected. The amount they will pay has not yet been ascertained. It follows that......this bill......was premature.'" After thus reviewing Means's Appeal, the court below states this conclusion therefrom: "If the bill filed in the case above quoted was premature because it had not yet been ascertained how much of the liability of the stockholders would be re-

quired to meet the indebtedness of the bank, then the statute of limitations did not begin to run until that fact was ascertained.   So far as the evidence in this case shows [referring to the case at bar], the first adjudication of the fact that the entire statutory liability of the stockholders was necessary to meet the liability of the bank was in February, 1910......The statute of limitations did not begin to run until the order of court, February 21, 1910, and was therefore not a bar to this action."

It is true the statute of limitations was not directly involved in Means's App., supra, but, unless a relevant act of assembly expressly provides otherwise, the rule is that no limitation commences to run against any demand until the obligation or debt is due and payable, in the sense that it is defined sufficiently to be capable of enforcement, and the case just reviewed plainly decides that the statutory liability of stockholders, such as there and here involved, is not enforcible until an account has been stated, the amount which the assets of the bank will pay have been judicially ascertained and an assessment authorized to make up the deficiency.   Moreover, this conclusion was reached by reasoning on general principles, without controlling reference to the provisions of any particular act of assembly; and, although other points were there involved, upon which the judgment entered might rest, yet it cannot properly be said that the issue as to the maturity of the action was not a material one, particularly when we note the elaborate consideration given it by this court.   We agree with the learned trial judge that the ruling in the Means case, as to the date when a right of action against a stockholder accrues, is controlling here.

When the court below first held the plaintiff corporation insolvent, and appointed a receiver, that adjudication was a finding to the effect that the bank was then unable to pay its debts (Com., ex rel., Bell, v. Tradesmen's Trust Co. of Philadelphia, 237 Pa. 316, 319), but not that the situation eventually would require an en-

forcement of the stockholders' statutory liability, or, if it should so eventuate, to what extent the liability would have to be enforced.    While much discussion in Swearingen v. Sewickley Dairy Co., 198 Pa. 68, depended upon by the defendants, may seem inconsistent with our position in this case, yet it is to be remembered that the effort in that and other like cases was to secure payment of the balance due on a stock subscription contract—not to enforce a statutory responsibility such as we have before us in the present instance.    Some judges seem to consider a responsibility of this latter character analogous to a contractual liability for unpaid stock subscriptions, but the judicial view upon the subject is by no means uniform.    In our State a distinction has been drawn between the two, and, if it is to be compared to anything, the statutory responsibility of a stockholder is considered more akin to that of a member of a mutual insurance company fixed with the obligation to pay a proportionate share of losses; as to this, see Schofield v. Turner, 213 Pa. 548, where we ruled that the statute of limitations did not begin to run in favor of such a member, against his liability to pay an assessment to a receiver of an insolvent insurance company, from the time of its judicially declared insolvency, but only from the date of the decree ascertaining its financial necessities and authorizing the assessment: see also Smith v. Bell, 107 Pa. 352, and Eichman, Receiver of No. Schuylkill Mutual Fire Ins. Co., v. Hersker, 170 Pa. 402, 411.

While, as before said, there is far from unanimity of opinion upon the subject in hand, yet the conclusion reached by the court below is not without support in other jurisdictions, as to which see Miller v. Connor, 177 Mo. App. 630, 631, 638, 639, where it was held that the right of action against shareholders of an insolvent bank for double liability imposed by statute did not accrue, so as to start the running of the statute of limitations, until the insolvency of the bank, its inability to pay, and the amount necessary to be contributed by each stockholder

to liquidate its indebtedness, were determined by a competent tribunal, the court there saying: "But it is argued on the part of defendant that, as the bank became insolvent and so voluntarily confessed itself through the assignment on June 15, 1899, the cause of action accrued on that date against defendant and the statute has barred the right to sue. It seems that this argument omits to reckon with the character of liability imposed by the statute on the shareholders in the bank. This statute imposes a liability for the debts of the bank in favor of the creditors of the bank in double the amount of the par value of shares held by defendant. Such is not an obligation of the shareholder to the bank as such, but is rather an obligation which it is said is contractual in character in favor of the creditors and secondary to the bank as the principal debtor.......This being true, it would seem, as a necessary sequence, that until the insolvency of the bank, its consequent inability to pay, and the amount essential to be contributed by each stockholder to that end is ascertained and determined by a competent tribunal, no cause of action accrues therefor. Indeed, it is said that the ascertainment of the debts and liabilities of the bank and the judicial determination of the necessity and the requisite extent of the enforcement of the stockholders' liability are essential prerequisites to the collection of the amounts owing by them. Until such an ascertainment is had, the liability and its extent may not be fixed upon anyone, for it may be that the bank during liquidation would realize sufficient on its assets, as is frequently done through increase in values of investments, to pay out without resort on the part of the creditors to the secondary obligation of the shareholders. When judicial ascertainment is had and the assets of the bank are definitely determined to be insufficient, then the pro rata contribution of the shareholders may be extended against them to supply the deficiency. It is as a result of such judicial determination and ascertainment that the cause of action arises against the

shareholder in a fixed amount. The amount thus fixed for the shareholder to pay then becomes due, and it is the failure to pay it, when so ascertained to be due, that constitutes the breach of duty because of which the cause of action accrues. This being true, the statute of limitations does not commence to run until that time." See also Hale, Receiver, v. Cushman, 96 Me. 148, where it was held that the liability of a stockholder to contribute to the payment of the debts of a corporation "does not arise at the time of the insolvency of the corporation, nor until it has been judicially determined that a resort to the liability of the stockholder is necessary and authority is given to enforce it"; that "there is no breach of duty by the stockholder, and the cause of action upon such liability does not accrue until then"; and Craig's App., 92 Pa. 396, 400, where this court said upon the subject of bank stockholders' double liability: "Certain it is, these men can be compelled to pay no more than a ratable share of the debts of the bank proportioned to the amount of their stock; but in this case that share has not yet been ascertained.......They are not sureties, their liability is special and sub modo only; it is limited to an amount equal to their subscriptions, and it accrues only when the assets of the bank have been exhausted, nor can it be enforced except by a judicial decree first had and obtained: Means's App., 85 Pa. 75. The effort here, however, is to compel contribution......before such decree, and, hence, before there is any legal liability; this cannot be done." In Schlaudecker's App., 22 W. N. C. 37, 39, we ruled: "The personal liability of the stockholder......is not in the nature of direct indebtedness to the corporation or its creditors, but rather a collateral liability which may or may not occur upon the final disposition of the assets......, and in this the stockholders are guarantors rather than sureties"; and see Aultman's App., 98 Pa. 505, at p. 515.

In conclusion we may say: while the authorities on the subject indicate that, when the enforcement of the

whole statutory liability of a stockholder is necessary to assist in meeting the demands of a given situation, a formal assessment of a particularly designated amount is not required, yet they also show that, in a case like this, judicial ascertainment of the fact of the necessity for such a full enforcement is required before a right of action accrues against the stockholder of an insolvent corporation. Here, as pointed out by the court below, "the first adjudication of the fact that the entire statutory liability of the stockholders was necessary to meet the liabilities of the bank was in February, 1910"; hence the period of limitation had not run when this action was instituted in 1914, and the learned trial judge properly so held. There was no dispute on the essential facts in the case, and, under the law, there was nothing for the jury to pass upon; therefore, it follows that no error was committed in giving binding instructions for the plaintiff, in declining such instructions for the defendant, or, subsequently, in entering judgment on the verdict.

The assignments are all overruled and the judgment is affirmed.