BEATTY et al. v. MILEY et al.

No. 34083.    June 26, 1951.

*233 P. 2d 269.*

Service & Marshall, Edmond, and David A. Kline, Oklahoma City, for plaintiffs in error.

Williams, Williams & Williams, Ardmore, for defendants in error.

GIBSON, J. This action was commenced in the district court of Carter county, Oklahoma, by Mrs. Oakla Alma Miley, Charles Eugene Kendall and Mrs. Florence Mae Duncan, plaintiffs, against the defendants for the possession of certain described lands including an undivided one-half interest of the mineral rights therein, and for the rents and profits on said real estate, and other proper relief. By supplemental petition plaintiffs prayed judgment quieting their title.

The petition of plaintiffs was filed June 18, 1947. One of the named plaintiffs, Charles Eugene Kendall, died on July 2, 1947, and the trial court by order of July 29, 1947, revived the action in the name of Jerome E. Hemry,

executor of the estate of Charles E. Kendall, deceased.

There were twenty defendants. When the case was called for trial on June 22, 1948, judgment by default was rendered in favor of the plaintiffs and against all defendants who had failed to appear and plead.

On October 9, 1948, the trial court rendered judgment in favor of the plaintiffs, Mrs. Oakla Alma Miley, Florence Mae Duncan, Jerome E. Hemry, executor under the will of Charles E. Kendall, deceased, and against the defendants, holding that said plaintiffs recover the land involved, consisting of 120 acres in Carter county, Oklahoma, "except such interests, if any, that said defendants, or any of them, might have acquired from the one-half of the mineral rights therein owned by J. A. or John A. Kendall and which is not involved in this action." Title to the premises was quieted and confirmed in the plaintiffs.

Motions for new trials filed by twelve of the defendants were overruled, and thereafter appeal was properly lodged here.

Defendants in the trial court are appellants in this court, but for convenience we shall refer to the parties as they appeared in the court below.

Patent to the land involved was issued to one Loring Robinson who, joined by his wife, conveyed to J. A. Kendall, on December 9, 1920. May 17, 1922, J. A. Kendall by a general warranty deed conveyed said lands to his wife, Lillie Pearl Kendall. Following the description of the property is this language: "Reserving to grantor an undivided one-half interest in and to all of the mineral, oil and gas with the privilege of full development of said property as may be necessary for use of same." This reserved undivided one-half interest is not involved in the present lawsuit.

The conveyance by J. A. Kendall to his wife was in pursuance of a property settlement in a divorce action between those parties, which settlement was approved by the district court of Carter county when the divorce decree was entered. Thereafter Lillie Pearl Kendall married one William M. Watt.

On November 12, 1925, Lillie Pearl Watt executed a conveyance of these lands to William M. Watt, her husband. This conveyance was designated as a "warranty deed", and it is the basis of the controversy between these parties litigant.

Plaintiffs base their claim of title under this deed, asserting a vested interest in the remainder. All these plaintiffs were children of Lillie Pearl Watt, the grantor, and under this record they were her only children.

On October 1, 1930, William M. Watt by warranty deed conveyed the land back to his wife, Lillie Pearl Watt. On September 10, 1931, Lillie Pearl Watt executed a warranty deed to W. B. Johnson, grantee, free and clear of all encumbrances except one-half of the royalty and certain taxes.

Defendants assert a fee-simple title through mesne conveyances from W. B. Johnson.

In their brief defendants present their contentions of error by the trial court under five propositions.

It is urged by defendants that any estate which vested in the plaintiffs under the above mentioned deed was subject to defeat by a subsequent deed of Lillie Pearl Watt and that this was the effect of her later deed to W. B. Johnson.

In considering this proposition certain facts must be kept in mind. (1) On November 12, 1925, Lillie Pearl Watt executed a deed to her husband, William M. Watt, as grantee. Omitting the acknowledgment it reads:

## Warranty Deed

"Know All Men by These Presents:

"That I, Lillie Pearl Watt, formerly Kendall, Carter County, State of Oklahoma party of the first part, in consideration of the love and affection and the sum of One ($1.00) Dollars, in hand paid, the receipt of which is hereby acknowledged, do hereby grant, bargain, sell and convey unto William M. Watt, my husband of Carter County, State of Oklahoma party of the second part, the following described real property and premises situated in *Carty* County, State of Oklahoma, to-wit:

"East Half of the Southwest Quarter and the Southeast Quarter of the Northwest Quarter of the Southwest Quarter and the East Half of the Southwest Quarter of the Southwest Quarter and the Southwest Quarter of the Southwest Quarter of the Southwest Quarter, Section 3, Township 2 South, Range 2 West.

"Party of the Second part to hold said land during the time that the relation of husband and wife exists between the Parties hereto and when such relationship ceases because of death of either party or from other causes, this property shall go in equal parts to children of the Party of the First Part, provided if any of my children should die leaving children of their own, such children would take the interest of my deceased child.

together with all improvements thereon and the appurtenances thereunto belonging, and warrant the title to the same.

"To Have and To Hold said described premises unto the said party of the second part free, clear and discharged of and from all former grants, charges, taxes and judgments, mortgages and other liens and encumbrances of whatsoever nature except the reversionary interest above referred to. It is understood that there is no homestead rights in any of this property, except all valid outstanding mortgages and except one-half of the mineral rights which was reserved by John A. Kendall in conveying said land to me.

"Signed and delivered this 21st day of November, 1925.

"Lillie Pearl Watt,
formerly Kendall."

(2) On October 1, 1930, William M. Watt conveyed the property back to Lillie Pearl Watt by warranty deed. (3) On September 10, 1931, Lillie Pearl Watt executed a warranty deed to W. B. Johnson. (4) William M. Watt died June 24, 1932. (5) At his death the three plaintiffs who brought this action were all living and they were the children and the only children of Lillie Pearl Watt.

Subsequent to the trial of the case this court rendered its decision in Whitten v. Whitten, 203 Okla. 196, 219 P. 2d 228. The facts of the two cases are very similar. In the Whitten case the grantor conveyed a life estate to the grantee for her lifetime with the remainder over to the "heirs of her body". In the case at bar the estate granted was the possession and use of said property during the time that the relationship of husband and wife existed with the remainder to the grantor's children.

In the Whitten case we held that the remainders were contingent remainders and that upon a grant of a particular estate limited to determine upon the happening of an event which is certain to happen, with a contingent remainder over, there remains in the grantor a reversion, subject to be defeated by the happening of the contingency upon which the remainder is conditioned. It was further held that where the grantor created a contingent remainder in the entire fee with remainder to the heirs, the only alienable or assignable estate remaining in the grantor was that of a reversion which was subordinate to the contingent remainder. It was further held that subsequent deeds by the grantor to the grantee were ineffective to disturb the existence of the remainder theretofore created and could not enlarge into a fee the life estates then enjoyed by the grantees, and the only effect of such deeds was to carry to the grantees the reversion theretofore vested in the grantor.

We deem the Whitten case controlling in the case at bar. The deed from Mrs.

Watt to her husband conveyed title to the land to be held by the grantee only so long as "the relation of husband and wife exists between the parties." That marriage relationship ceased with the death of the husband. From the date of the deed the termination of the marriage relationship was an event that was certain to happen, by death or from other causes, as stated in the deed. The reversion held by Lillie Pearl Watt prior to the death of the husband was now defeated by the happening of an event upon which the contingent remainder was conditioned.

The Whitten case is cited with approval by the United States Circuit Court of Appeals, 10th Circuit, in Parsons v. Parsons, 174 F. 2d 1000. The second syllabus reads:

"Under devise to son of land to fall to son's heirs at his death, son to have all revenue of land during lifetime and at his death same to fall to his heirs, son took a life estate, and his heirs a contingent remainder which vested upon his death."

It is urged by the appellants that under the authority of Trumbla v. State ex rel., 191 Okla. 119, 126 P. 2d 1015, when the husband executed the deed back to his wife a fee-simple title vested in her in that she was a reversioner first in order and that she therefore had the right to dispose of the property as she saw fit, and that her deed to W. B. Johnson vested in him a fee-simple title.

With this contention we cannot agree. The husband, William M. Watt, had nothing to convey to his wife but a limited estate,—a temporary estate to be held by him during the married life of the parties. There is a distinction between a reversionary interest and a remainder. A remainder must be created by deed or devise while a reversion may arise by operation of law.

From the time of her deed to her husband Lillie Pearl Watt held the reversion, but her children held the remainder contingent upon the occurrence of a subsequent event which was certain to happen. The deeds from William to Lillie and from Lillie to Johnson were ineffective to disturb the existence of the remainders theretofore created. Neither nor both of these deeds could operate to enlarge the title acquired by William from his wife into a fee title or to destroy the remainder held by the plaintiffs.

Distinction between the Trumbla case and the one under consideration renders it of little value in the present discussion. In that case it was held that the meaning of the deed then before the court was uncertain and parol evidence was heard as to the subsequent acts of all the parties showing their construction of the terms of the deed, and the court found that the deed conveyed a fee-simple estate notwithstanding a clause providing that at the death of the grantor the property should go to certain heirs. Here the record is silent as to any acts or intentions of the plaintiffs to treat the deed from their mother in any manner other than one vesting a life estate in William M. Watt, with the remainder in the plaintiffs. Furthermore, in the Trumbla case subsequent to the death of the husband and father, John Trumbla, the widow conveyed to all the heirs by warranty deed, reserving a life estate unto herself, and thus faithfully carried out the desire of the husband and father expressed in his deed to his wife.

Defendants rely upon Conrad v. Funnell, 106 Okla. 56, 232 P. 950, but we fail to see where that case is helpful. A prenuptial agreement between Robert Funnell and Sarah E. Morris provided that a life estate should go to her and upon her death to the heirs of Robert Funnell, the grantor. Later, there was a separation between the husband and wife. Thereafter the father conveyed the land described in the nuptial agreement to his sons, Fred Funnell and Jesse Funnell. Later Sarah, his wife, gave them a quitclaim deed. The dispute was between these two sons

and other brothers and sisters, who claimed that under the prenuptial agreement the lands went to Robert's children notwithstanding that he was living when Sarah died. The court held that Robert, having granted a life estate to his wife and having outlived his wife, the reversion was to him, the grantor, and not to his heirs, and that he had a right to convey the property after her death.

In Brown v. Boone, 129 Kan. 786, 284 P. 436, the Supreme Court of Kansas, after holding that the grantee of the deed in question there took a life estate, said, in the body of the opinion, on page 437:

"The next takers after Laura A. Boone were her children. The words 'heirs' and 'heirs of her body' are peculiarly words of limitation. The word 'children' is just as peculiarly a word of purchase. . . .

"The deed was not testamentary in character. A subsequent deed by the grantor did not modify the effect of the first conveyance. The life tenant could not prejudice the remaindermen by dissipating the substance of the thing granted, the land, by means of a mineral lease."

William M. Watt received from Lillie Pearl Watt an estate similar to a life estate, and that is all that he conveyed back to her. She held the reversion and the merger of such interest as William M. Watt had did not reinvest her with a fee-simple title. Her later deed to W. B. Johnson conveyed only such interest as she then had. It could not modify the effect of her first conveyance under which the plaintiffs, as her children, acquired a contingent remainder. She could not prejudice the remaindermen by her subsequent conveyance.

Johnson took his conveyance with record notice of the limitations on the then interest or estate of Lillie Pearl Watt. All defendants deraign their claim of title or interest through W. B. Johnson, and took such interest with the same notice that there was an out-standing contingent remainder in the plaintiffs which could ripen into a right of possession on termination of the marriage relation between Mr. and Mrs. Watt.

We hold that plaintiffs' rights as remaindermen were not defeated by the subsequent deed of Lillie Pearl Watt to W. B. Johnson.

Defendants say that the statute of limitations is a bar to the plaintiffs' prosecution of this action.

In their briefs both parties to this action agree that the applicable statute of limitations is Tit. 12 O. S. 1941 §93, subd. 4. They disagree as to when the statute began to run.

Defendants assert that plaintiffs' right of action would accrue "immediately upon the happening of any event in derogation of their title" and that the reconveyance by William M. Watt to Lillie Pearl Watt, on October 1, 1930, was such an event.

Defendants contend that the cause of action arose and that the statute of limitations commenced to run on the date that the relationship of husband and wife between William M. Watt and Lillie Pearl Watt ceased to exist, which was on June 24, 1932. Plaintiffs' petition was filed June 18, 1947, which was more than fifteen years after the deed from William M. Watt to his wife, and less than fifteen years after the death of William M. Watt.

This was an action for possession of real estate.

"The general rule is the statute of limitation begins to run when cause of action accrues, and the true test to determine when the cause of action accrues is to ascertain the time when plaintiff could first maintain his action to a successful result." Big Four Foundry Co. v. Hagens, 197 Okla. 409, 172 P. 2d 322.

In Lincoln v. Herndon, 141 Okla. 212, 285 P. 120, this court held that until the death of the life tenant the plain-

tiffs would not be entitled to possession of the premises nor could they maintain an action for possession. And it was further held that a life tenant would not be presumed to hold the same adversely to a remainderman, so as to set the statute of limitations in operation, until the extinguishment of the life estate.

"As a general rule, the statute of limitations does not begin to run until there is a right of action.

"The children of Thomas Brookbank had no right to the possession of the land in controversy, nor did they have any interest in it until the death of Mary Brookbank, their stepmother, and for this reason the statute of limitations did not begin to run as to them while she lived." Haskett v. Maxey, 134 Ind. 182, 33 N. E. 358, cited with approval in Lincoln v. Herndon, supra.

Plaintiffs had no right of action for possession of the property until the contingency set forth in the deed, to wit: the ceasing of the marital relations by the death of William M. Watt had occurred. This suit was filed within fifteen years from the time that the plaintiffs had a legal right to assert their cause of action and therefore the action was not barred by the statute of limitations. Having reached this conclusion, we need not discuss the fact that some of the plaintiffs were minors at the time the aforementioned deeds were executed.

Defendants also assert that their title vested by prescription, contending that they adversely occupied the land in question for the statutory period. Here they say that the adverse possession began immediately upon the execution of the deed to W. B. Johnson by Lillie Pearl Watt on September 10, 1931, more than sixteen years prior to the filing of this suit.

In Lincoln v. Herndon, supra, this court held that a life tenant or his grantee will not be presumed to hold the premises adversely to a remainderman so as to set the statute of limitations in operation until after the extinguishment of the life estate. The same rule applies here as to the termination of the marital relations of the parties mentioned in the deed. Since the plaintiffs had no right to possession until the death of William M. Watt, the defendants cannot be heard to say that they held the lands adversely to the plaintiffs, prior to the happening of the event which gave plaintiffs their right of action. This action was commenced within fifteen years from the time that plaintiffs could have asserted a cause of action for the possession of the lands.

Tit. 60, O. S. 1941 §333, provides:

"Occupancy for the period prescribed by civil procedure, or any law of this State as sufficient to bar an action for the recovery of the property, confers a title thereto, denominated a title by prescription, which is sufficient against all."

In Gassin v. McJunkin, 173 Okla. 210, 48 P. 2d 320, this court held that prescription by title ripens by occupancy of land under such circumstances and for such period of time as would bar an action against occupier for recovery thereof.

Plaintiffs began their action within fifteen years from the date their right of action for possession accrued and therefore the adverse possession asserted here was not for such a period of time as would bar plaintiffs' action for recovery of possession of the land, and the claim of title by prescription fails.

It is said by defendants that the recital in the deed by Mrs. Watt to her husband is void because it violates the rule against perpetuities and the statute on suspension of alienation, citing 60 O. S. 1941 §§31 and 34.

Defendants say that the rule of interpretations as to wills and deeds is the same.

In Munger v. Elliott, 187 Okla. 19, 100 P. 2d 876, this court held:

"Testatrix devised portions of her property to her son, and other portions to four certain grandchildren, children of a deceased son. The remainder of her property was to be held in a trust created by the will, and the income therefrom divided between her son and the children of her deceased son until the youngest of such children reached majority. If the surviving son of testatrix died prior to the termination of the trust, the income from the trust estate was to be divided between the four grandchildren. Upon the termination of the trust the corpus of the trust estate was to be divided one-half to the son, if living, and one-half to her grandchildren, and if the son died prior to such termination, the property was to go to her grandchildren. Held, that the will did not violate the statute against restraints on alienation, it being the evident intent of testatrix, by the use of the term grandchildren in providing for distribution, to designate the four children of her deceased son previously mentioned in the will."

There is no violation of the rule against perpetuities in this case. The grant of similar contingent remainders to a child or children of the grantor in the event of his death has been upheld. Parsons v. Parsons; Whitten v. Whitten, supra.

Defendants say that the gift by Mrs. Watt was to her children as a class, who could not be ascertained until the marriage relation should cease, which they contend was a condition precedent before the remainder vested. The rule is otherwise.

"Where a contingent remainder is given to a class of persons by description and the contingency consists not merely in the uncertainty of the persons by whom the estate is to be taken but also in events disconnected with the persons to take, the estate vests in the persons answering the description when the contingency happens." 21 C. J. 986.

In this case plaintiffs were the living children of the grantor when she executed the deed on November 21, 1925, and at the time of her husband's death on June 13, 1932, and at the time the petition herein was filed on June 18, 1947. There has never been any uncertainty as to the identity of the remaindermen.

It is said that the warranty deed of Mrs. Watt to her husband, being statutory in form, conveyed the fee-simple title to the husband; that the granting clause of the deed is unambiguous and that recital as to the remainder is repugnant to the operative part of the deed.

Defendants cite 16 O. S. 1941 §19, defining the interests conveyed in a warranty deed made in the form prescribed by the statute. There is nothing in this section which prohibits an owner conveying a limited estate if he so intends or a life estate or a remainder.

The creation of remainders and contingent remainders is specifically authorized by statute, 60 O. S. 1941 §30, and 60 O. S. 1941 §40.

In Berry v. Cooley, 188 Okla. 426, 109 P. 2d 1081, this court said:

"In the matter of judicial construction and interpretation of deeds containing conditions or limitations upon the grant, the basic element to be kept in mind is the intended purpose of the deed as gathered from the instrument itself. Although there are many decisions to the effect that any limitation or restriction inserted in a deed which purports on its face to convey an absolute estate in fee simple is subordinate to the general intent of the grant, wholly inconsistent with the nature thereof and the main intention of the parties, and inoperative and void, the intention of the parties nevertheless prevails in all cases."

In the case at bar the intent of the grantor, Lillie Pearl Watt, in executing the deed in question was clearly expressed in the granting clause and stressed as an exception in the habendum clause.

Affirmed.

ARNOLD, C. J., LUTTRELL, V. C. J., and WELCH, CORN, HALLEY, and O'NEAL, JJ., concur.