**DINCHER v. MARLIN FIREARMS CO.**

No. 263, Docket 22347.

United States Court of Appeals
Second Circuit.

Argued May 13, 1952.

Decided July 28, 1952.

Frank, Circuit Judge, dissented.

Louis L. Bucciarelli, New York City, for plaintiff-appellant.

Francis J. Moran, John E. McNerney, Albert R. Moquet, New Haven, Conn., for appellee.

Before AUGUSTUS N. HAND, CHASE and FRANK, Circuit Judges.

CHASE, Circuit Judge.

The sole question presented is whether the cause of action was barred by § 8324 of the Connecticut Statutes (Revision 1949) which provides, in pertinent part, as follows:

"Limitation of action for injury to person or property. No action to recover damages for injury to the person, * * * caused by negligence, * * shall be brought but within one year from the date of the act or omission complained of, * * *."

The plaintiff, a citizen of Pennsylvania, invoked the diversity jurisdiction of the court to bring this suit on April 19, 1951 against a Connecticut corporation whose principal place of business is in New Haven in that state. The complaint alleged that, on July 8, 1949, a cousin of the plaintiff purchased a rifle, which had been manufactured by the defendant, from a sporting goods dealer known as Raemore Sporting Goods, in Williamsport, Penn. On July 3, 1950, he loaned the rifle to the plaintiff who, while shooting at a mark with it on the same day, lost his left eye when the rifle back-fired. The cause of this injury was alleged to have been the negligence of the defendant in manufacturing the rifle with too much headspace between the face of the bolt and the rear space of the barrel to make it safe for shooting. In more detail it was alleged that "the excessive headspace caused the cartridge to move to such an extent that the sides of the cartridge were not supported by the walls of the chamber, and resulted in a rupture in the case which caused the release of high pressure gases into the breach mechanism and the rejection of metal particles and powder residue from the rifle into the plaintiff's left eye."

The defendant pleaded the statute of limitations and moved for summary judgment. The motion was granted and the plaintiff has appealed. The only additional facts appear by affidavit and are that the defendant had manufactured the rifle and had sold it to the Harder Sporting Goods Company of Williamsport, Penn. It shipped it on May 28, 1946 to that purchaser who paid for it on June 6, 1946. So far as appears, the defendant had nothing further to do with it.

In diversity actions the law of limitations of the state is applicable in a federal court sitting in a district therein. Guaranty Trust Co. of New York v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079; Ragan v. Merchants Transfer & Warehouse Co., 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520. The plaintiff does not, of course, question that but insists that if § 8324 is applicable it should be construed to mean that the one year period did not begin to run until the plaintiff was injured. Its alternative position is that not this section but § 8315, which limits the bringing of actions on simple or implied contracts to "within six years next after the right of action shall accrue", is applicable.

The alternative contention cannot be sustained in view of the decisions of the state court. They show that actions for breach of implied warranties, to which § 8315 is applicable, may be brought only by persons who are parties to the contract alleged to have been breached or in privity with them. Borucki v. MacKenzie Bros. Co., 125 Conn. 92, 3 A.2d 224; Burkhardt v. Armour & Co., 115 Conn. 249, 161 A. 385, 90 A.L.R. 1260. Since there is nothing to show that the plaintiff was in such relationship to the defendant, no cause of action in Connecticut for breach of any contract, express or implied, can be spelled out on the facts now of record. Borucki v. MacKenzie Bros. Co., supra.

Turning now to § 8324, it should be noticed that its forerunner, § 6015, Connecticut General Statutes (Revision 1930), limited the time within which actions could be brought to recover damages for injury to the person caused by negligence to one year "from the date of the injury or neglect complained of" and that, effective July 1, 1935, the above quoted words were re-

placed with those of the present statute, "from the date of the act or omission complained of." This change is significant and undermines the plaintiff's argument that the period of limitations is still to be measured from "the date of the injury" i. e., from the time the cause of action accrues. Kennedy v. Johns-Manville Sales Corp., 135 Conn. 176, 62 A.2d 771. Cf. Giambozi v. Peters, 127 Conn. 380, 16 A.2d 833. It may also be noted by way of contrast that in other sections of the Connecticut limitations statute the words, "after the right of acion shall accrue" are used to fix the point of time from which the prescribed period of limitation is measured. Cf. Connecticut General Statutes, §§ 8315, 8317, 8320, 8323, 8326 (Revision 1949).

Of course, the act or omission complained of took place, at the latest, when the sale of the defective gun was complete, on June 6, 1946, to put the gun on the market without using reasonable care to make sure that it would not cause harm to one who used it as it was to be expected that it would be used. As this act or omission occurred more than one year before the commencement of this suit, § 8324 bars the action.

Judgment affirmed.

FRANK, Circuit Judge (dissenting).

1. Except in topsy-turvy land, you can't die before you are conceived,[1] or be divorced before ever you marry,[2] or harvest a crop never planted, or burn down a house never built, or miss a train running on a non-existent railroad. For substantially similar reasons, it has always heretofore been accepted, as a sort of legal "axiom," that a statute of limitations does not begin to run against a cause of action before that cause of action exists, i e., before a judicial remedy is available to the plaintiff. For a limitations statute, by its inherent nature, bars a cause of action solely because suit was not brought to assert it during a period when the suit, if begun in that period, could have been successfully maintained; the plaintiff, in such a case, loses for the sole reason that he delayed—beyond the time fixed by the statute—commencing his suit which, but for the delay, he would have won.[3]

As the Connecticut Supreme Court has said, the policy behind a limitations statute is that of penalizing one who " 'sleep[s] upon his rights' ".[4] But no student of such legal somnolence has ever explained how a man can sleep on a right he does not have. The Connecticut courts have often acknowledged the good sense of the "axiom" described above. In tort cases, they have set as the critical date—i e., the date at which the statute of limitations begins to operate—the time when (to quote a recent Connecticut case interpreting the very statutory section involved here) "the legal wrong was done" to a plaintiff, i. e., when "legal damage" occurred; until then, said the court, there was no actionable "in-

---

1. Samuel Butler had the fantasy of men and women who "began life with death and lived it backwards, beginning as old people and ending [their] days by entering the womb again and being born." Consider also H. G. Wells' "time-machine" running backwards.

2. Cf. Llewellyn, Behind the Law of Divorce, 32 Col.L.Rev. 1281 (1932).

3. See, e.g., Federal Reserve Bank of Atlanta, for Use of American Surety Co. of New York v. Atlanta Trust Co., 5 Cir., 91 F.2d 283, 286–287, 117 A.L.R. 1160; Kirschler v. Wainwright, 255 Pa. 525, 100 A. 484, 485–486, L.R.A.1917E, 393; Aachen & Munich Fire Ins. Co. v. Morton, 6 Cir., 156 F. 654, 657, 15 L.R.A., N.S., 156; Foley v. Pittsburgh-Des Moines Co., 363 Pa. 1, 68 A.2d 517, 535; Moore v. Montgomery Ward & Co., 171 Miss. 420, 423, 156 So. 875: " * * * it is a familiar principle that no statute of limitations runs against a party until he is allowed by law to do the thing as to which the statute is interposed"; Beatty v. Miley, 204 Okl. 634, 233 P.2d 269, 275; Newton v. Hunt, Ind.App., 103 N.E.2d 445, 448; Hunter v. Hunter, 361 Mo. 799, 237 S.W.2d 100, 103; Hillel [Hillet] v. Motor Haulage Co., Sup., 102 N.Y.S.2d 578, 580; Tortorello v. Reinfeld, 6 N.J. 58, 77 A.2d 240, 243; L. B. Laboratories v. Mitchell, Cal.App., 237 P. 2d 84, 91, 92, rehearing granted see Cal. Sup., 244 P.2d 385.

4. Consolidated Motor Lines, Inc. v. M. & M. Transportation Co., 128 Conn. 107, 108, 20 A.2d 621, 622.

jury."[5] As the Connecticut Supreme Court had earlier stated, "It is because of the laches of the creditor in failing to pursue his remedy that the statute deprives him of the right to pursue it after a prescribed time. But there can be no laches where there is no right of action."[6] "And," that court declared in another case, "the statute of limitations does not begin to run in favor of any person until there is a cause of action."[7] "The statute of limitations", it said in still another opinion, "assumes the existence of a cause of action * * *."[8] In a case[9] recently cited with approval by the Connecticut Supreme Court,[10] it was observed: "There can be no doubt that a cause of action accrues only when the forces wrongfully put in motion produce injury. Otherwise, in extreme cases, a cause of action might be barred before liability arose."

This "axiom" was applied recently in Di Gironimo v. American Seed Co., D.C.E.D. Pa., 96 F.Supp. 795, 797, a case the facts of which closely resemble those of the instant case. There plaintiff, a minor (who sued by his father and next friend) had been hurt by an air rifle pellet discharged from an air rifle which the defendant had sold to another minor who permitted a third minor to fire the rifle. The court said: "In arguing that the action is barred by the two year statute of limitations, 12 P.S. § 34, defendant maintains that the period of limitations should be computed from the time of the alleged negligent act of the defendant, that is, from the time of the sale of the air rifle. However, the statute specifically provides that in cases where the injury does not result in death the suit must be brought within two years 'from the time when the injury was done

and not afterwards'.[10a] Furthermore, 'It would seem elementary * * * that a cause of action cannot accrue until an injury is actually inflicted upon the person bringing the suit * * *.' Foley v. Pittsburgh-Des Moines Co., 363 Pa. 1, 68 A.2d 517, 535. The minor plaintiff had no cause of action against the defendant on the date of the sale of the air rifle because he had not then been injured. If, as defendant suggests, the intervening time until the injury had been a matter of many years rather than, as here, a matter of a few months, that fact would bear not upon the problem of limitations but upon the problem of proximate cause. A right of action accrues only when injury is sustained by the plaintiff, not when the causes are set in motion which ultimately produce an injury as a consequence. Pollock v. Pittsburgh Bessemer & Lake Erie R. R. Co., 275 Pa. 467, 119 A. 547, 26 A.L.R. 1232; Rudman v. City of Scranton, 114 Pa.Super. 148, 173 A. 892. So calculated, the statutory period of limitations has not run."

My colleagues, however, hold that the Connecticut legislature rendered impotent these common-sense rulings by enacting § 8324 which reads as follows: "*No action to recover damages for injury to the person, or to real or personal property, caused by negligence, or by reckless or wanton misconduct, or by malpractice of a physician, surgeon, dentist, chiropodist, chiropractor, hospital or sanatorium, shall be brought but within one year from the date of the act or omission complained of, * * *.*"[10b]

As we all agree, if this statute of limitations does not bar plaintiff's claim, his complaint states a good cause of action, and the judgment dismissing it must be reversed. For defendant, on the oral argument, con-

---

5. Kennedy v. Johns-Manville Sales Corp., 135 Conn. 176, 178, 62 A.2d 771, 772.

6. Appeal of Hull, 82 Conn. 647, 652, 74 A. 925, 927.

7. Eising v. Andrews, 66 Conn. 58, 65, 33 A. 585, 587.

8. Schempp v. Beardsley, 83 Conn. 34, 37, 75 A. 141, 142.

9. Schmidt v. Merchant's Despatch Transporation Co., 270 N.Y. 287, 300, 200 N.E. 824, 827, 104 A.L.R. 450.

10. Kennedy v. Johns-Manville Sales Corp., 135 Conn. 176, 179, 62 A.2d 771.

10a. This is not precisely the language of the Connecticut statute. That language I shall discuss later.

10b. Emphasis added.
    Section 8316, the catch-all section covering limitations of tort actions, uses the same words, "act or omission complained of." Accordingly, my colleagues' ruling, if correct, applies to all tort actions. See discussion in the text, infra.

ceded that, in Connecticut and Pennsylvania, a manufacturer, like defendant, of a rifle defectively made through the manufacturer's negligence, is liable for harm done, because of that defect, to a person into whose hands the rifle comes in the very manner in which the rifle came into the plaintiff's hands here.[11] As the sole issue here, then, is whether the one-year Connecticut statute barred this plaintiff's cause of action, the following dates are important:

(a) Defendant manufactured the rifle in 1946.

(b) Defendant sold and shipped it to Harder Sporting Goods Company of Williamsport, Pennsylvania, on May 26, 1946.

(c) The Harder Sporting Goods Company paid defendant for the rifle on June 6, 1946.

(d) Between June 6, 1946 and July 8, 1949, Raemore Sporting Goods of Williamsport, Pennsylvania, acquired the rifle (presumably by purchase from Harder).

(e) July 8, 1949, Raemore sold the rifle to plaintiff's cousin.

(f) July 3, 1950, plaintiff's cousin loaned it to plaintiff.

(g) July 3, 1950, plaintiff lost his left eye when the rifle back-fired.

This time-table discloses that, on June 6, 1946, when defendant sold the defective rifle to a dealer, plaintiff had no cause of action—no actionable claim—against defendant. Had plaintiff brought an action against defendant within one year from June 6, 1946, of course the court, on defendant's motion, would have dismissed on the merits. Why? Because defendant's sale in 1946 was then of no concern to plaintiff. His knowledge or lack of knowledge of that sale has no pertinence in 1946–1947. If in

1946–1947 he had filed a complaint alleging the 1946 sale of a defective rifle by defendant to the dealer, the complaint would have revealed no wrong to plaintiff. Not until July 3, 1950, when he first obtained possession of the rifle, could plaintiff have asserted a valid claim. Not until then was a legal remedy available to him.

Yet my colleagues hold that, because plaintiff did not bring his action between June 6, 1946 and June 6, 1947, the one-year statute bars his present suit—although he brought it within one year from the date when he first had an actionable claim. In sum, my colleagues say that this statute begins to run against a claim from a time when that claim did not yet exist.

I cannot agree. No one can intelligently assert that the defendant's conduct here invaded any interest of the plaintiff before July 3, 1950. Previously, plaintiff was not in the "zone of danger" created by defendant's negligence;[12] until he received the rifle, plaintiff did not enter that zone. In short, *it takes two to make a tort*.

True, as the Restatement of Torts puts it, the potential "ambit of liability" of a negligent manufacturer like plaintiff includes liability not only to defendant's vendee but as well to "all persons whom the vendee or his sub-vendee or donee permits to use the article" or to whom the vendee or donee "sells or gives the chattel *ad infinitum*, and also all persons whom such sub-vendee or sub-donee permits to use the chattel or share in its use."[13] But, as to liability to any particular person, inclusion in this "ambit" remains merely a possibility up to the time when it becomes an actuality through that person's obtaining possession of the article or through certain other events (such as physical injury to him through the use of the article by a vendee

---

11. See Restatement of Torts, § 395, which reads: "Negligent Manufacture of Chattel: Dangerous Unless Carefully Made. A manufacturer who fails to exercise reasonable care in the manufacture of a chattel which, unless carefully made, he should recognize as involving an unreasonable risk of causing substantial bodily harm to those who lawfully use it for a purpose for which it is manufactured and to those whom the supplier should expect to be in the vicinity of its probable use, is subject to liability for bodily harm caused to them by its lawful use in a manner and for a purpose for which it is manufactured."

12. Cf. Ehret v. Village of Scarsdale, 269 N.Y. 198, 207, 199 N.E. 56.

13. Restatement of Torts, § 395, comment d.

or donee or sub-vendee, or the like). At that time, the defendant's negligent "act or omission" first ripens into a cause of action by that particular injured person against defendant, and so sets in motion the applicable statute of limitations. Lurton, J., stated the rationale thus in Aachen & Munich Fire Insurance Co. v. Morton, 6 Cir., 156 F. 654, 657; "It is the duty of a municipality to maintain its streets so that they may be safely used by the public. But *the mere fact that a street is in a dangerous condition will not give a right of action to every one who chooses to sue. It is only when some injury has occurred as a consequence that the statute begins to run* against the injured person's right of action." [13a]

The courts have made this distinction: (1) Not until an actionable claim occurs does the statute begin to run. (2) But when such a claim occurs, the statute may run although the plaintiff is ignorant that he has such a claim.[14] This distinction has been neatly phrased by the Supreme Court of Pennsylvania:[15] "It would seem elementary * * * that a cause of action cannot accrue until an injury is actually inflicted upon the person bringing the suit, and certainly until October 20, 1944 no action of any kind could have been brought by the present plaintiff; *it is inconceivable that she should be barred by lapse of time before the time when she could have instituted* [*her*] *suit*.[16] It is true that the running of the statute is not postponed by the failure of a plaintiff to realize that he has suffered damage, or by the belated appearance of a disease or infirmity which was not revealed when the injury was actually inflicted. * * * But * * * a right of action accrues only when injury is sustained by the plaintiff—not when the causes are set in motion which ultimately produce injury as a consequence."

This distinction was carefully made in Kennedy v. Johns-Manville Sales Corp., 135 Conn. 176, 62 A.2d 771, 773, a case on which my colleagues lean heavily and which I think wholly inapposite. There plaintiff

brought suit in 1946, alleging that in 1935 defendant had insulated the walls of plaintiff's house so negligently that they were then injured but that the damage was not apparent to plaintiff until December 1945. The court held that the one-year statute—§ 8324—began to run in 1935, so that the claim was barred in 1936, because in 1935 defendant did plaintiff an actionable wrong for which at once plaintiff could have begun a suit not subject to dismissal on the merits for lack of a cause of action. The court, rejecting the "contention of the plaintiff * * * that the right of action did not accrue until the damage became manifest in 1945," said: "There is a distinction between the occurrence in 1935 of the wrongful act which gave rise to the damage and the becoming aware of the actual damage by reason of its discovery in 1945. It is well established that ignorance of the fact that damage has been done does not prevent the running of the statute, except where there is something tantamount to a fraudulent concealment of a cause of action. * * * In the present case, the faulty work which is alleged to have broken the contract resulted in legal damage as soon as it was done. The injury was inflicted at the time the work was done and not by subsequent neglect on the part of the defendant." But in the instant case, the conduct of the defendant did not result in "legal damage" to plaintiff "as soon as it was done" but years later, in 1950.

In the Johns-Manville case, the Connecticut court cited with approval the decision in Schmidt v. Merchants Despatch Transportation Co., 270 N.Y. 287, 300, 200 N.E. 824, 827, 104 A.L.R. 450, where the New York court said: "Though negligence may endanger the person or property of another, no actionable wrong is committed if the danger is averted. It is only the *injury* to person or property arising from negligence which constitutes an invasion of a personal right, protected by law, and, therefore, an actionable wrong. * * * Through lack of care a person may set in motion forces

---

13a. Emphasis added.

14. This does not always apply to all limitations statutes.

15. Foley v. Pittsburgh-Des Moines Co., 363 Pa. 1, 68 A.2d 517, 535.

16. Emphasis added.

which touch the person or property of another only after a long interval * * * and then only through new, fortuitous conditions. There can be no doubt that a cause of action accrues only when the forces wrongfully put in motion produce injury."

I think that to interpret the statute as my colleagues do, is to ascribe an unreasonable purpose to the legislature. The Connecticut courts uniformly refuse to take such an attitude towards the Connecticut legislature. Looking to the object of a statute, they repudiate, if possible, a literal interpretation when it leads to an unreasonable or anti-common-sense result.[17] Were there here no escape from an unreasonable result, of course the Connecticut court and we would be obliged to accept it. But as the United States Supreme Court has said: "It would require language so clear as to leave room for no other reasonable construction in order to induce the belief that Congress intended a statute of limitations to begin to run before the right barred by it has accrued." United States v. Wurts, 303 U.S. 414, 418, 58 S.Ct. 637, 639, 82 L.Ed. 932.[18] I know of no case, and my colleagues cite none, in which a limitations statute has been construed to require such a result.

My colleagues give the Connecticut statute just such a construction. They argue that their amazing interpretation is inescapable because of the following: From 1930 to 1935, § 8324 read: "one year from the date of the *injury or neglect* complained of."[19] In 1935, the legislature substituted, for the italicized words, the words, "act or omission". This change, according to my colleagues, ineluctably compels the conclusion that the one-year statute did not run from the date when plaintiff for the first time had an actionable claim but from the date—four years earlier—when defendant did an act (selling the rifle) which then in no manner had any impact on plaintiff. To this argument, there are two answers:

(1) The phrase "act or omission" is a conventional synonym for "injury or neglect" and has long been used in referring to tortious conduct.[20]

(2) In addition to § 8324, the statutory chapter entitled "Statute of Limitations" contains a catch-all section, § 8316, dealing with limitations on tort actions generally. From 1930 to 1935, this section read: "No action founded upon a tort * * * shall be brought but within six years *next after the right of action shall accrue.*"[21] In 1935, the legislature changed "six years" to "three years," and substituted, for the italicized words, the words "from the date of *the act or omission* complained of." It is obvious that, in the chapter on Limitations, the legislature, in the interest of uniformity, in 1935 decided to use "act or omission" when dealing with limitations on tort actions. Accordingly, the change in § 8324 lacks significance.

Moreover, in making that change, the legislature continued to retain the locution "after the right of action shall accrue" in the limitations sections relating to contracts. This differentiation in language relative to torts and contracts, respectively, serves to dispose of my colleagues' argument that the absence of "accrue" in § 8324 must mean that plaintiff's claim was barred before he had a claim. It should also be noted that, in Kennedy v. Johns-Manville Sales Corp.,

17. See, e.g., Wyka v. Colt's Patent Fire Arms Manufacturing Co., 129 Conn. 71, 74, 26 A.2d 465; New Haven Savings Bank v. Warner, 128 Conn. 662, 668–669, 25 A.2d 50; Lutkevicz v. Brennan, 128 Conn. 651, 655, 25 A.2d 66; Waterbury Savings Bank v. Danaher, 128 Conn. 78, 85, 20 A.2d 455; Giammattei v. Egan, 135 Conn. 666, 668, 68 A.2d 129; Ullman ex rel. Levine v. Department of Health, 10 Conn.Supp. 188, 191.

18. Cf. Kirschler v. Wainwright, 255 Pa. 525, 100 A. 484, 485–486, L.R.A.1917E, 393.

19. Emphasis added.

20. See, e.g., Prosser, Torts (1941) 190; 65 C.J.S., Negligence, § 2, pages 326, 327, 402, 412; 74 A.L.R. 1318; 144 A.L.R. 210.

21. Emphasis added.

135 Conn. 176, 179, 62 A.2d 771, the court, while engaged in interpreting § 8324, used the word "accrue" as interchangeable with the words "wrongful act." [22]

---

22. The limitations statutes of several states use, as interchangeable with "accrue," the words "act" and "omission." See, e.g., Wisconsin Statutes (1951) 330.20; Burns, Indiana Statutes Annotated, Civil Code (1933) 2-602, second; Revised Code of Montana, Annotated (1947) 93-2604, 93-2605; Oregon Compiled Laws Annotated (1940) 1.201, 1.205, 1.208; cf. Revised Code of Delaware (1935) 5129, 5133, 5134.

Cf. Weber v. Board of Harbor Commissioners, 18 Wall. 57, 68, 21 L.Ed. 798: "shall have accrued" in a limitations statute interpreted as "shall have existed."

Of course, the Connecticut legislature could enact a valid "substantive" statute providing that a person in the position of the plaintiff here should never have a claim against a manufacturer of an article unless it came into plaintiff's possession within a certain time—for instance, a year after its manufacture or a year after its sale by the manufacturer. But that would not be a statute of limitations; and the statute here before us is specifically labelled and described as a limitations statute.